## Staunton

ROBERT D. LIMBERG v. WALTER SEAN LENT, AN INFANT, ETC., ET AL.

September 10, 1965.

Record No. 5988.

Present, All the Justices.

*John J. Daly (Anthony J. Siciliano; Robert L. Ellis; Paul F. Sheridan; Siciliano & Daly*, on brief), for the plaintiff in error.

*John Charles Harris (Harris, Roark & Glynn*, on brief), for the defendants in error.

GORDON, J., delivered the opinion of the court.

A boy and his father recovered judgments for $20,000 and $5,000, respectively, or a total of $25,000, for injuries and expenses resulting from an alleged negligent act of the defendant. The boy was injured when a piece of metal from a screwdriver, which the defendant had struck with a hammer, flew into the boy's eye.

Principally, the defendant-appellant argues that since the plaintiff was a guest on the defendant's premises when he was injured, the defendant should not be held liable unless the injury was the result of gross negligence or wilful or wanton misconduct, which was not proved.

This issue has been determined, adversely to the defendant, by our decision today in *Bradshaw* v. *Minter*, 206 Va. 450, 143 S.E. 2d 827, holding that ordinary care is the standard. Like *Bradshaw*, this case involves activities of the host, and not the condition of his premises; and the trial judge correctly interpreted the applicable Virginia law as announced in *Bradshaw*. He instructed the jury that the defendant owed the duty to exercise reasonable care to avoid injury to the boy; that if the defendant violated this duty, he was negligent, and the plaintiffs were entitled to recover if the negligence proximately caused the injury to the boy.[1]

The sole remaining issue is whether the evidence was sufficient to support the jury verdict for the plaintiffs. The evidence was sufficient if the proof was adequate, as a matter of law, to raise the issue of the defendant's negligence—in other words, if reasonable men can differ whether the defendant observed his duty to exercise ordinary care to avoid injury to the boy.

In this connection, it should be noticed that the defendant did not fail to observe a duty owed to the boy, if it was not reasonably foreseeable that the defendant's actions might cause injury to him. See *Dennis* v. *Odend'Hal-Monks Corp.*, 182 Va. 77, 28 S.E. 2d 4; *Cleveland* v. *Danville, Etc., Co.*, 179 Va. 256, 18 S.E. 2d 913.

The twelve-year-old plaintiff, Walter Sean Lent, was injured while standing on the patio behind the home of the defendant, Robert D. Limberg—a Lt. Colonel in the Marine Corps. Walter Lent, who lived nearby, had come to visit the defendant's son, Stephen Limberg. The

---

[1] In this instruction, the judge also told the jury that the plaintiffs were not entitled to recover if the boy was guilty of negligence that proximately contributed to cause his injury. (By another instruction, the judge advised the jury of the legal presumption that a child between the ages of seven and fourteen years is incapable of contributory negligence and of the defendant's burden respecting proof of contributory negligence.)

two boys went to the patió, where Colonel Limberg was working with a lawn mower, to see what he was doing.

Colonel Limberg was seated on a concrete step, leaning over the lawn mower. Walter Lent stood opposite Colonel Limberg. He estimated that he was standing two or three feet from the lawn mower at the time of the accident; but Colonel Limberg's testimony indicated he was nearer to it. Colonel Limberg said that "We were all pretty close because it was dusk and I distinctly recall the boys' feet were probably about a foot from the mower itself, but both boys were leaning over quite close to where my head was . . .". He said that, at his request, the boys moved from a crouched to an erect position before the accident. Walter Lent, however, said that no such request was made during the approximate ten-minute period between his arrival on the patio and the accident.[2]

The lawn mower had been substantially disassembled before the day of the accident. Colonel Limberg had removed the motor and had installed it in a go-cart, which he was building for Stephen. At the time of the accident, he was attempting to remove a sprocket wheel from the lawn mower for use on the go-cart.

There was a shaft on the lawn mower, with a pulley on one end and a sprocket wheel on the other end. Colonel Limberg loosened the set screws on the sprocket wheel and the pulley, but was unable to remove either of them from the shaft. He then picked up a large screwdriver[3] and attempted to pry-off the pulley, so that he could remove the shaft with the sprocket wheel attached.

Unsuccessful in the prying effort, Colonel Limberg "seated" the screwdriver against the shaft and attempted to "break the pulley and the shaft loose," by striking the screwdriver with a metal hammer. After one of the blows, he saw a spark "fly up" from the blade. He then heard the plaintiff Walter gasp—a fragment of the blade of the screwdriver had pierced Walter's eye, causing severe injury.

Walter Lent said Colonel Limberg was striking the screwdriver

---

[2] Counsel attempted to prove contributory negligence by evidence of the defendant's request or direction that the boys stand back. The jury was entitled to believe that the warning was not given. Moreover, the defendant did not ask the boys to stand back for their safety. According to his testimony, he asked them to stand back because they were in his way; and when the boys responded by standing erect, he was satisfied since they were no longer "bothering me".

[3] The screwdriver, which was introduced in evidence, is approximately 9¼ inches long. It has a plastic handle (approximately 3½ inches long) and a metal blade (approximately 5¾ inches long, from the blade end to the handle). The defendant said he usually used the screwdriver for opening tin cans "and things of this sort"; he "never really used it for a screwdriver".

with a hammer "abruptly"; "He was tapping it fairly hard". According to him, Colonel Limberg "took fairly large swings"—"A foot, 18 inches, something around there". Although it might appear that Walter Lent exaggerated the length of the "swing" of the hammer, he was corroborated by the defendant's son, Stephen Limberg, who said that Colonel Limberg raised the hammer about a foot and a half from the screwdriver—"in that area generally". In any event, the evidence supports the conclusion that Colonel Limberg struck the screwdriver with force.

The most significant conflict in the evidence concerns the end of the screwdriver that Colonel Limberg struck with the hammer. The plaintiff Walter Lent testified that the handle end was placed on the pulley, and Colonel Limberg struck the blade end with the hammer. Colonel Limberg and his son testified that he struck the handle end. The jury verdict has resolved this question in favor of the plaintiffs.[4]

Neither party to this action has cited any authority bearing on the question under discussion—whether primary negligence, sufficient to raise a jury issue, was shown by the evidence in this case.[5] The principles determining liability or non-liability may be revealed by consideration of two cases, decided by the West Virginia and California courts and reaching opposite results.

The mechanic who was charged with negligence in *State* v. *Sims*, 138 W. Va. 482, 77 S.E. 2d 151, was engaged in draining gasoline from the tank on a truck owned by the State. The truck had been brought into a garage for repairs to the tank, which was leaking. While working under the vehicle, the mechanic lay on an appliance

---

[4] The jury verdict must be accepted as conclusive in this regard, unless we find it incredible that the defendant struck the blade end of the screwdriver. To strike the blade end is no doubt unusual; but it appears more likely that a fragment would fly into someone's eye if the blade were pointed up, than if it were pointed down and against a stationary object. And it was not argued, or suggested, by counsel in the lower court or here—nor was it suggested by the trial judge, who observed the witnesses and heard the evidence respecting the manner in which the screwdriver was struck—that the striking of the blade end was unworthy of belief, as a matter of law as distinguished from a matter of fact. Counsel for the defendant in his closing argument to the jury did not ask even the jury to conclude, as a matter of fact, that his client struck the handle end of the screwdriver; he did not mention this matter in his argument, despite the conflict in the testimony.

[5] Almost exclusive attention was directed, in the memoranda and briefs and in oral argument, to the degree of care owed to a social guest. On the question whether primary negligence was sufficiently proved, the appellant's brief makes only the bare statement that "the plaintiff did not even show . . . failure to use, even ordinary care, . . . or even simple negligence, passive or active. . .". No argument or citation of authority was set forth to support the statement.

with four steel rollers, known as a creeper. Sparks, caused by friction between the floor and the moving rollers on the creeper, ignited gasoline that had dripped from the faulty tank, resulting in the fire damage for which the plaintiff sought recovery. It was held that the mechanic had committed no negligent act and that the combustion of the gasoline by movement of the creeper was not reasonably foreseeable.

The plaintiff in *Hutton* v. *Pagni*, 167 Cal. App. 2d 14, 333 P. 2d 826, was injured when a fragment of metal from a punching die pierced his eye. On the day of the accident, the plaintiff brought metal sheets to the defendant's plant for hole-punching, and he assisted the defendant's employee, who was in charge of the hydraulic press used in the punching operation. After the overhead male punching die had been lined-up with the female die in the bed of the press, by visual measurement, the defendant's employee released the press head, to which the overhead male punching die was attached. The male die struck the female die, chipping the metal and causing a fragment to strike the plaintiff. There was evidence to the effect that visual measurement, if used, should have been accompanied by the use of an inching device to permit the lowering of the punching die gradually.

The California court held that the evidence supported the jury verdict for the plaintiff; that there was sufficient evidence of the employee's negligence in adjusting the dies and of proximate cause and, moreover, that the fracturing of the metal was reasonably foreseeable.[6]

The case at bar is unlike *State* v. *Sims, supra,* in that the workman there was using the equipment (the creeper) for the purpose for which it was intended. In this case, no evidence was introduced respecting the manner in which a screwdriver should be struck with a hammer. But no evidence was necessary, in view of the nature of the instrument. By common knowledge, a screwdriver is intended for use in turning screws. It is not intended for the purpose for which it was used by the defendant in this case.

Even if a screwdriver is commonly used as a chisel—is commonly struck with a hammer to dislodge something firmly fixed (which was not shown by the evidence or argued in this case)—surely the common practice is to strike the handle end, and not the blade end, of the screwdriver. Moreover, as pointed out by Mr. Justice Holmes

---

[6] The court pointed out an alternative basis for sustaining the jury verdict for the plaintiff, the rule of *res ipsa loquitur*. That rule, however, is not adopted in this case.

"What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not". See *Texas & P.R. Co. v. Behymer*, 189 U.S. 468, 470, 23 S. Ct. 622, 47 L. ed. 905; *Bly v. Southern Ry. Co.*, 183 Va. 162, 172-173, 31 S.E. 2d 564, 569.[7]

The defendant's use of the screwdriver as a chisel and his striking of the blade end with the force indicated by the evidence raised the issue of his negligence. The trial judge was correct in submitting the issue to the jury, the proper forum for its determination.

Furthermore, we find no basis for concluding as a matter of law it was not reasonably foreseeable that the negligent act might cause a chipping of the metal and injury to persons standing nearby. See *Hutton v. Pagni, supra.*

The trial court did not err, therefore, in submitting the issue to the jury and in sustaining the verdict for the plaintiffs. Accordingly, the judgments are

*Affirmed.*

---

[7] Cf. *Andrews* v. *Appalachian Elec. Power Co.*, 192 Va. 150, 63 S.E.2d 750, citing with approval the statement in *Jeffress* v. *Virginia Ry. Etc., Co.*, (127 Va. 694, 104 S.E.393) to the effect that where there was evidence of general usage in a business and no evidence tending to show that the usage was not reasonably safe or adequate for its purpose and occasion and no evidence that it did not afford as high protection as would result from any other known or practical method, the proven general usage was conclusive as to the method of inspection to be employed, but not conclusive whether the method was employed with reasonable care.