# Staunton

## CATHERINE BUSCH v. JOSEPH GAGLIO.

September 9, 1966.

Record No. 6173.

Present, All the Justices.

*Edward E. Lane* (*Lane, Paul and Rudd*, on brief), for the plaintiff in error.

*Edward A. Marks, Jr.* (*Sands, Anderson, Marks & Clarke*, on brief), for the defendant in error.

CARRICO, J., delivered the opinion of the court.

Catherine Busch, the plaintiff, secured a verdict from the jury against Joseph Gaglio, the defendant, in the sum of $6,500.00, for personal injuries suffered by her as the result of the alleged negligence of the defendant. Upon motion of the defendant, the trial court set aside the verdict and entered final judgment in his favor. The plaintiff was granted this writ of error.

The plaintiff was injured after dark on June 25, 1963, while a social guest on property owned by the defendant in the city of Richmond, when her leg became impaled upon the sharp edge of a pipe which the defendant had driven into his lawn.

The plaintiff was on the property to visit the defendant's mother and two sisters, who occupied the dwelling on the premises. The defendant lived elsewhere, but had purchased and provided the property in question as a home for his mother and sisters, without charge. The defendant, who was a building contractor, retained complete control of the property and performed all the maintenance and upkeep thereon.

The metal pipe which caused the plaintiff's injuries was driven into the ground with a sledge hammer by the defendant, about six months before the plaintiff's accident, to prevent persons from parking automobiles on the lawn. The defendant's mother and sisters protested the installation of the pipe. Their protests went unheeded, however, because, in the words of the defendant, "they could not object."

The pipe was approximately one inch in diameter and protruded above the ground from 12 to 20 inches. It was located in an unlighted area, 18 inches from a graveled sidewalk in front of the home and 12 inches from the edge of a graveled driveway leading into the property.

The condition of the pipe, at the time of the accident, was described as " . . . rusty. The lip of the pipe was battered as if some heavy object had been used to pound it into the ground, and a section of the lip or the end of the pipe was projecting upward in a curved, hook-like fashion."

The plaintiff had visited the defendant's mother and sisters on

several occasions prior to the night of the accident, each time parking her automobile on the side of the street opposite the home. After her last previous visit, when children in the neighborhood had committed vandalism on her automobile while it was parked on the street, the plaintiff was told by one of the Gaglio sisters, "the next time you come over you park in the driveway."

On the night in question, the plaintiff telephoned the Gaglio home "to see if it was all right to come over." She was told by the mother to come over at nine o'clock. Accompanied by her sister and her niece, the plaintiff drove to the Gaglio home, parked in the driveway, alighted from her vehicle and had "just started to walk across the grass" when her leg struck and became impaled upon the sharp pipe driven into the lawn.

The plaintiff, in her motion for judgment, based her claim against the defendant upon the theory that, without her knowledge, the defendant negligently had created a dangerous condition upon his premises and, knowing of its existence, had failed to remove the condition or to warn her of its presence, when she visited the premises and sustained her injury.

The trial court, in its instructions, submitted the case to the jury upon the plaintiff's theory. The court, however, set aside the jury verdict in favor of the plaintiff because, as stated in its written opinion, "there is no theory upon which a jury could impose liability upon [the defendant] and the Court, therefore, erred in not having sustained this defendant's motion to strike the evidence made at the close of plaintiff's case in chief and renewed after all of the evidence was in."

The plaintiff's assignments of error challenge the action of the trial court in setting aside the jury's verdict and entering final judgment in favor of the defendant. The defendant has filed assignments of cross-error in which he attacks the action of the court in permitting the case to go to the jury in the first instance. The defendant also complains of the granting and refusing of certain instructions.

Both parties to this appeal have unnecessarily confused the issue by resorting to numerous citations and quotations from the law of landlord and tenant. In the end, however, they agree that the law of landlord and tenant does not apply here and that the liability of the defendant for the plaintiff's injuries is to be determined by the rules applicable to the host-social guest relationship. The de-

fendant aptly describes the relationship of the parties when he says, in his brief, "As we view the matter [the plaintiff] was a social guest of the Gaglio family of which [the defendant] was the putative head."

■ This court recently had occasion to inquire into the status of a social guest and the duty owed to him by his host. In the case of *Bradshaw v. Minter*, 206 Va. 450, 143 S. E. 2d 827, the issue was whether proof of ordinary negligence would suffice to impose liability upon the landowner or whether it was necessary for the guest to establish gross negligence on the part of the host before recovery could be had.

We held that a social guest "is not in law an invitee, but is nothing more than a licensee." It was stated that the general rule, followed in Virginia, was that "no duty is imposed upon the owner or occupant to keep his premises in a safe and suitable condition for the use of a licensee, and that so far as the condition of the premises is concerned the owner or occupant is only liable for any willful or wanton injury that may be done to him."

The court noted, however, that there was an exception to the general rule, an exception which applied to the case then under review, "where a guest is injured by reason of the activities of the host which may constitute active or affirmative negligence as distinguished from passive negligence, that is, the condition of the premises. Where the activities of the host are involved, the test should be one of reasonable care under the circumstances."

The rule was adopted that "in cases involving injury resulting from *active conduct*, as distinguished from conditions of the premises, the landowner or possessor may be liable for failure to exercise ordinary care towards a licensee whose presence on the land is known or should reasonably be known to the owner or possessor."

See *Limberg v. Lent*, 206 Va. 425, 143 S. E. 2d 872, for another host-social guest situation involving active negligence.

■ But there is another well recognized exception to the general rule, an exception which directly relates to condition-of-the-premises cases and which was not involved or considered in *Bradshaw v. Minter, supra*. This exception applies to the case before us and, contrary to the ruling of the trial court, provides a theory upon which liability may be imposed upon the defendant within the framework of the plaintiff's motion for judgment, the evidence and the instructions of the trial court.

This exception is set forth in the Restatement of the Law of Torts, an authority upon which this court relied in the *Bradshaw* case to impose liability upon a landowner for active negligence. In the Restatement of the Law of Torts, Second Edition, social guests are classified as licensees and in § 342, p. 210, this rule is stated:

"A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,

"(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and

"(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and

"(c) the licenseees do not know or have reason to know of the condition and the risk involved."

Illustration No. 4, set forth on page 212 of the Restatement, fits the situation before us like a glove:

"4. A invites a friend, B, to take dinner with him at his country place at eight o'clock on a winter evening. A knows that a bridge in his driveway over which B must pass to reach A's house is in a dangerous condition which is not observable in the dark. A does not tell B of this fact. The bridge gives way under B's car, causing B serious harm. A is subject to liabilty to B."

In 65 C.J.S., Negligence, § 63 (35), p. 703, at p. 706, the exception to the general rule is stated in this manner:

". . . a possessor of land is liable for bodily harm caused to a gratuitous licensee by a natural or artificial condition thereon, only if the possessor knows of the condition and realizes that it involves an unreasonable risk to the licensee, and has reason to believe that the licensee will not discover the condition or realize the risk, and permits him to enter or remain on the land, without exercising reasonable care to make the condition reasonably safe or to warn him of the condition and risk involved. . . ."

In 38 Am. Jur., Negligence, § 117, p. 778, this is said:

" . . . [T]he host is not liable for an injury sustained by the guest from some defect in the condition of the premises, *except as the licensee is needlessly exposed to peril through the failure of the owner or occupant to warn him of danger*, or by the active negligence of the owner or occupant. . . ." [Emphasis added.]

In an Annotation, Injury to Social Guest, 25 A.L.R. 2d 598, at p. 602, it is stated:

" . . . [T]he host's only duty is not to injure, by active or affirmative negligence, a guest whose presence is known, not to set a trap or pitfall for the guest, *to warn against or remove defects which the landlord knows are likely to cause harm to the guest, and which he has reason to believe the guest is not likely to discover for himself,* and generally not to cause injury by gross negligence, recklessness, or wanton and wilful misconduct. . . ." [Emphasis added.]

The exception here recognized finds support in earlier cases before this court. In *Lunsford v. Colonial Coal Co.*, 115 Va. 346, 349, 79 S. E. 348, it is stated:

" ' . . . [A licensee] takes upon himself all the ordinary risks attached to the place and the business carried on there.' The owner must not intentionally or wilfully injure him, *but he owes him the active duty of protection only after he knows of his danger, or might have known of it and avoided it by the use of ordinary care. . . .*" [Emphasis added.]

In the leading case of *Pettyjohn & Sons v. Basham*, 126 Va. 72, 78, 100 S. E. 813, this language is found:

"In the case of licensees, the occupant is charged with knowledge of the use of his premises by the licensee, and while not chargeable with the duty of prevision or preparation for the safety of the licensee, *he is chargable with the duty of lookout, with such equipment as he then has in use to avoid injury to him at the time and place where the presence of the licensee may be reasonably expected. . . .*" [Emphasis added.]

See also *Baecher v. McFarland*, 183 Va. 1, 6, 31 S. E. 2d 279; *Raven Red Ash Coal Co. v. Griffith*, 181 Va. 911, 926, 27 S. E. 2d 360; Doubles, Emroch and Merhige, Virginia Jury Instructions, § 34.14, p. 303, § 34.15, p. 304.

■ We hold, then, adverting to the Restatement of the Law of Torts, Second Edition, that the defendant was liable to the plaintiff for injuries caused her by the condition on his land if he knew or had reason to know of the condition, should have realized that it involved an unreasonable risk of harm to her, should have expected that she would not discover or realize the danger, and failed to exercise reasonable care to make the condition safe or to warn

her of the condition; provided, however, that she did not know or have reason to know of the condition and the risk involved.

The trial court, in its written opinion, stated, and properly so, that the evidence and the verdict of the jury established that the plaintiff was a licensee upon the defendant's premises and "(1) that the pipe was a dangerous instrumentality posing a threat to third persons on the premises in the immediate vicinity of the pipe, (2) that this fact was known or should have been known to [the defendant], and (3) that plaintiff neither knew nor was she, in exercise of reasonable care, chargeable with knowing of its existence."

That being so, the plaintiff's case was directly brought under the canopy of the exception to the general rule which we here recognize. The defendant, by his own act, created the dangerous condition on his land, and he knowingly permitted it to remain there, realizing that it was a threat involving an unreasonable risk of harm to those visiting upon his premises. He should have expected that, either in the darkness of night or in the light of day, those so upon his land would not, just as the plaintiff did not, discover the sharp, hook-like condition of the pipe or realize the danger it posed. And yet, while permitting social guests, including the plaintiff, to come upon the premises, he failed to correct the dangerous condition or to give any warning of its presence. The plaintiff did not know, nor did she have reason to know, of the condition on the land and the risk involved.

Under these circumstances, the questions of the defendant's primary negligence and of the plaintiff's contributory negligence were properly submitted to the jury.

What has been said disposes of the defendant's assignments of cross-error concerning the trial court's action in submitting the case to the jury and in granting and refusing instructions relating to the standard of care of the defendant. There remains unanswered one other complaint of the defendant.

The defendant contends that the court erred in granting, at the behest of the plaintiff, Instruction No. 5-A, setting forth the various elements of damage which the jury might consider in determining the amount of the plaintiff's award, if the jury should find in her favor. We have examined the questioned instruction and, suffice to say, find no merit in the defendant's contention.

The jury's verdict was rendered upon sufficient evidence, under

proper instructions, in a fair trial. The verdict should not have been set aside. Accordingly, the judgment of the trial court will be reversed, the verdict will be reinstated and final judgment thereon entered here in favor of the plaintiff against the defendant.

*Reversed and final judgment.*