No. 44,597

CARRIE D. RALLS, *Appellant*, v. DAN CALIENDO, *et ux., Appellees.*

(422 P. 2d 862)

Opinion filed January 21, 1967.

*Patrick F. Kelly*, of Wichita, argued the cause, and *John C. Frank*, of Wichita, was with him on the briefs for appellant.

*Roger M. Sherwood*, of Wichita, argued the cause, and *W. A. Kahrs, Robert H. Nelson, H. W. Fanning, Richard C. Hite, Darrell D. Kellogg* and *Richard L. Honeyman*, of Wichita, were with him on the briefs for appellees.

The opinion of the court was delivered by

FATZER, J.: This was an action to recover damages for personal injuries sustained by the plaintiff-appellant, Mrs. Carrie D. Ralls, as a result of a slip and fall sustained in the home of the defendant-appellees, Dan and Mabert Caliendo.

The case was tried to a jury and at the close of the plaintiff's evidence, the defendants moved to dismiss the action, or in the alternative, for a directed verdict. After hearing argument, the district court made findings of fact, and sustained the motion to dismiss and discharged the jury. The plaintiff has appealed.

The parties will be referred to as they were designated in the district court, or as Mrs. Ralls, Mrs. Caliendo or Mr. Caliendo.

The depositions of both Mr. and Mrs. Caliendo were taken by the plaintiff prior to the trial and both testified as witnesses for the

plaintiff at the trial. Portions of both depositions were read to the jury and the plaintiff includes in her statement of points erroneous rulings of the district court excluding portions of both depositions.

The plaintiff and her daughter, Lucille R. Thomas, at the express invitation of the defendants, went to their home on December 25, 1963, to attend a family Christmas dinner. The plaintiff is an aunt of Mrs. Caliendo. She was an elderly woman eighty-five years of age, and prior to December, 1963, had broken one of her ankles. However, she had completely recovered and was rather active prior to her fall in the defendants' home on Christmas Day as hereafter related, although she had some limitation with respect to her vision.

Upon arriving at the defendants' home, the plaintiff walked throughout the house, and prior to the serving of dinner, she walked from the living room and dining room into the kitchen toward the recreation or family room. To reach the family room, one would walk through the kitchen to a corner where a refrigerator with an ice making machine was located, past the refrigerator into a narrow entrance and down two or three steps to the family room. The defendants owned a dog and kept its water pan which had a "tippy" base, near the refrigerator. There was always water spilled around the dog pan.

When the plaintiff entered the kitchen, Mrs. Caliendo and her mother were busy preparing the dinner for fifteen or sixteen people. Mrs. Caliendo testified she saw her aunt walking through the kitchen but did not pay much attention or caution her; that she was "kinda weak and frail," and was, "holding onto the refrigerator"; that, "she went around the side of the refrigerator to hold onto the wall evidently because I turned around just as she was pawing at the wall and the wall ran out and she just went out into the other room (family room) but she slipped on something right there," near where the dog pan was.

Mrs. Caliendo further testified she knew the plaintiff was an elderly woman but expected her to walk through the kitchen; that she was aware of her ankle injury and that she was not as capable of getting around or as steady on her feet as an ordinary person; that she (Mrs. Caliendo) knew ice cubes had fallen on the floor that day prior to the accident because the children had been filling water glasses with ice cubes out of the ice making machine and her husband was mixing drinks for the guests and used ice cubes from the machine; that she cautioned the children to, "Be careful;

quit making such a mess"; that ice cubes would fall and she would kick them or the children would kick them under the refrigerator and they would melt and run out, not in the direct path to the family room but in the path the plaintiff took; that, "there had been water on the floor in times past, plenty of times, they are always dropping ice cubes," and that she knew there was water on the floor in this particular area before the accident but just did not stop to mop while she was getting dinner. She further testified her husband had previously fallen in the area where the plaintiff fell.

Mr. Caliendo testified he was a builder and that the kitchen had a vinyl linoleum covering with a smooth finish and the floor was in good repair at the time of the plaintiff's fall; that he had a bar in the kitchen near the refrigerator and was mixing drinks for guests; that he would get ice cubes out of the ice making machine and that, "you drop one or two ice cubes when you get a handful from the ice maker"; that when he would mix drinks for guests he would "frequently grab a handful of ice cubes from a tray and more often than not one slips and this wasn't the first time that there had been water there as a result of melting ice cubes and as a result of one of these cubes falling from my hand"; that it had "happened a dozen times," and, "that's why after the plaintiff's fall I immediately saw that there was water there right at the threshold (to the family room) which I assume was the cause of her slipping." He further testified the narrow opening between the kitchen and the family room was reasonably close to the refrigerator; that the dog pan located there was unsubstantial and had since been replaced with a substantial one; that immediately after the plaintiff's fall, he saw water on the floor at the threshold; that the "puddle of water" was at the landing where the vinyl ends and the steps begin, but there was no water in the family room, and that it was his opinion the plaintiff slipped on some water that existed near the threshold, causing her to fall. Mr. Caliendo did not see the plaintiff fall and testified he was satisfied he knew there was water there prior to the accident; that after the accident he told his wife to wipe up the water so no one else would slip, and that it "appeared to be a dangerous condition."

As indicated, the district court made findings of fact which read:

"That the Plaintiff walked through the kitchen into the family room or rumpus room.

"That she fell.

"That there was water on the floor at the time that she walked through.

"That the water came from either the dog pan or from the melting of ice cubes.

"That the Defendants should have known that the water might be there."

In sustaining the motion to dismiss, the district court stated:

"To me, that is the most favorable light that we have as far as the Plaintiff is concerned. The Plaintiff in this case is a licensee, and therefore the duty of the Defendants was such that their actions or omissions would have to be reckless in order for the Plaintiff to recover. As I understand it, in this jurisdiction the term 'recklessness' is a stronger term than that of ordinary negligence; that their conduct must be such as to evince disregard of or indifference to the consequences under the circumstances, involving danger to life or safety of others.

"Under the facts, as I see it, most favorable to the Plaintiff, the acts or omissions of the Defendants constitute nothing more than ordinary negligence which is not sufficient to sustain a cause of action or entitle the Plaintiff to recover for the injuries she received as a result of this fall."

While the plaintiff concedes the accepted rule in Kansas is that, "a host owes to his licensee guest a duty to refrain from willful, wanton or reckless conduct," this court has not had occasion to inquire into the status of a social guest, that is, one who is expressly invited to the owner or occupier's home, and the duty owed to him by his host. Where, as here, the plaintiff is a social guest in the defendants' home, the great weight of Anglo-American authority classifies him as a bare licensee, even though he was expressly invited. (*Southcote v. Stanley*, 1 H. & N. 247 [Ex. 1856]; *Sanders v. Brown*, 73 Ariz. 116, 238 P. 2d 941; *Laube v. Stevenson*, 137 Conn. 469, 78 A. 2d 693; *Comeau v. Comeau*, 285 Mass. 578, 189 N. E. 588; *Vogel v. Eckert*, 22 N. J. Super. 220, 92 A. 2d 633; *Curren v. O'Connor*, 279 App. Div. 1018, 111 N. Y. S. 2d 714; cases collected in Note, 25 A. L. R. 2d 598.) See, also, *Busch v. Gaglio*, 207 Va. 343, 150 S. E. 2d 110; *Goldberg v. Straus*, 45 So. 2d 883 (Fla. 1950); Harper on Torts, 3d Ed., Sec. 98; Restatement of the Law of Torts (1934), Sec. 342; Anno. 92 A. L. R. 1005.

Our decisions conform to the foregoing general rule. The plaintiff must be regarded as a mere licensee in the defendants' home at the time she slipped and fell, causing her injuries. In *Steinmeyer v. McPherson*, 171 Kan. 275, 232 P. 2d 236, it was held:

"A licensee is a person who is privileged to enter or remain upon land by virtue of the possessor's consent, whether given *by invitation* or permission.

"Ordinarily the only duty an owner or occupant of premises owes to a mere licensee is the duty to refrain from *willfully, intentionally or recklessly* injuring him." (Syl. ¶¶ 3, 4.) (Emphasis supplied.)

See, also, *Bessette v. Ernsting,* 155 Kan. 540, 127 P. 2d 438; *Backman v. Vickers Petroleum Co.,* 187 Kan. 448, 357 P. 2d 748, 94 A. L. R. 2d 1; *Hogan v. Hess Construction Co.,* 187 Kan. 559, 358 P. 2d 755; *Blackburn v. Colvin,* 191 Kan. 239, 380 P. 2d 432. In *Blackburn* it was said:

"In order for the plaintiff to recover, it was not necessary that his evidence establish a formal and direct intention to injure any particular person. It was sufficient if it indicated that degree of indifference to the rights of others which may justly be characterized as reckless. Reckless is an indifference whether wrong is done or not—an indifference to the rights of others. (*Stout v. Gallemore,* 138 Kan. 385, 391, 26 P. 2d 573.) In popular use and by our decisions 'recklessness' is a stronger term than mere or ordinary negligence. (*K. P. Rly. Co. v. Whipple,* 39 Kan. 351, 18 Pac. 730.) In *State v. Custer,* 129 Kan. 381, 282 Pac. 1071, it was said:

"'. . . To be reckless, conduct must be such as to evince disregard of or indifference to consequences, under circumstances involving danger to life or safety of others, although no harm was intended.' (1. c. 395.)" (p. 246.)

In view of the foregoing, did the evidence, considered in the light most favorable to the plaintiff, and giving her the full benefit of all reasonable inferences for which it supplies a foundation, entitle her to have her cause submitted to the jury? We think not.

The plaintiff makes no claim the defendants were guilty of willful or wanton negligence; it is claimed only the factual circumstances were such the plaintiff was entitled to a jury's consideration whether the defendants' conduct was reckless, that is, whether it was such as to evince disregard of or indifference to consequences involving danger to the plaintiff. It is argued the defendants had created the condition or circumstances and knew of its presence; that they failed to momentarily warn the elderly plaintiff of its presence or assist her in any manner prior to her fall, notwithstanding the fact one of them had previously fallen in the area for similar reasons, and it was considered a dangerous condition.

Based upon the standard of proof announced in *Blackburn,* supra, we are of the opinion the evidence was not such as to authorize a jury to consider the defendants' acts or omissions as that entire want of care which would raise the presumption of a conscious indifference to consequences, justly characterized as reckless. It is unnecessary to restate the evidence. At most, the defendants' conduct constituted nothing more than, as the district court concluded, ordinary negligence which is not sufficient to permit the plaintiff to recover or to have her cause submitted to a jury.

The foregoing conclusion makes it unnecessary to consider the plaintiff's statement of points of claimed erroneous rulings of the district court excluding portions of both the defendants' depositions. The evidence excluded tended to prove ordinary negligence; none of it tended to prove conduct such as to evince disregard of or indifference to consequences for the plaintiff's safety.

We have fully examined the record and find no error, and we conclude the judgment of the district court must be affirmed. It is so ordered.

FATZER, J., concurring and dissenting: I am in accord with the court's holding the plaintiff's evidence tended to establish only ordinary negligence on the part of the defendants and was insufficient to evince disregard of or indifference to consequences, justly characterized as recklessness. However, I must respectfully dissent from its judgment affirming the dismissal of the action.

Assuming, *arguendo*, the plaintiff, by reason of the express invitation to attend the family Christmas dinner at the defendants' home, was nothing more than a mere licensee, the case should be reversed and remanded for a new trial.

This court has refined the rule with respect to the duty an owner of land owes to a licensee, at least to the extent that if the owner, while the licensee is upon the premises in the exercise of due care, is actively negligent in the management of his property, as a result of which the licensee is subjected to increased hazard and danger, the owner will be liable for injuries resulting from such active misconduct. (*Montague v. Burgerhoff*, 150 Kan. 217, 223, 224, 92 P. 2d 98.) *Montague* has not been cited or applied by this court since it was decided in 1939, until in *Morris v. Atchison, T. & S. F. Rly. Co.*, 198 Kan. 147, 422 P. 2d 920. Hence, it follows that an owner now has the duty not only to refrain from willfully, intentionally or recklessly injuring a licensee, but in addition, to refrain from injuring him by active conduct which would constitute active negligence.

While the distinction between an injury resulting from passive negligence—negligence which causes dangers arising from the physical condition of the land itself, on the one hand, and an owner's active negligence, on the other, may not always be clear cut, courts which have considered the question have generally held that "active negligence" is negligent conduct of active operations on the premises or in the management of the property, as a result of which the

licensee is subjected to increased hazard and danger. (*Perry v. St. Jean,* ____ R. I. ____, 218 A. 2d 484; *Potter Title and Trust Co. v. Young,* 367 Pa. 239, 80 A. 2d 76; *Busch v. Gaglio,* 207 Va. 343, 150 S. E. 2d 110; *Mistretta v. Alessi,* 45 N. J. Super. 176, 131 A. 2d 891; *Choate v. Carter,* 98 Ga. App. 375, 105 S. E. 2d 909; *Hennessey v. Hennessey,* 145 Conn. 211, 140 A. 2d 473; *Howard v. Howard,* 186 C. A. 2d 622, 9 Cal. Reptr. 311; *Newman v. Fox West Coast Theatres,* 86 C. A. 2d 428, 194 P. 2d 706, 708.) See, also, James, Tort Liability of Occupiers of Land: Duties owed to Licensees and Invitees, 63 Yale L. J. 605. Active negligence as applied in *Montague* is conduct which represents an increased hazard or danger to the licensee or may be termed as an overt act of negligence. (Vol. 12, Kan. L. Rev. pp. 571, 572.)

The rule of general liability of owners of land to licensees is set forth in Restatement, Second, Torts, Secs. 341 and 342. The latter section reads:

"§ 342. DANGEROUS CONDITIONS KNOWN TO POSSESSOR

"A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,

"(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and

"(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and

"(c) the licensees do not know or have reason to know of the condition and the risk involved."

The court's opinion classifies a social guest as a mere licensee. I do not agree. While perhaps he does not have the status of a business invitee, he certainly is more than a mere licensee. Although the host is not an insurer of the safety of the guest while upon his premises, some duty short of that owed to a business invitee is owed to the guest. In my judgment, the duty imposed under *Restatement* is that the host exercise reasonable care not to cause injury to his guest by any act or any activity carried on by him while the guest is on the premises. Moreover, coupled with that duty is the duty to warn the guest of any condition of the premises which is known to the host and which one of ordinary prudence and foresight in his position should reasonably consider dangerous, if he has reason to believe the guest will not know and will not discover the dangerous condition. (*Scheibel v. Lipton,* 150 O. S. 308, 102 N. E. 2d 453; 2 Harper and James, Laws of Torts, Sec. 27.11, p. 1476.)

As I understand the applicable law, the essential elements which measure the duty the defendants owed to the plaintiff as a social guest, under the facts and circumstances in the instant case, are that (1) the plaintiff had been invited by the defendants to attend the family Christmas dinner and they knew of her presence in their home, (2) thereafter they failed to exercise reasonable care (*a*) to refrain from actively subjecting her to danger, or (*b*) to warn her of the dangerous condition—in the portion of their home to which she had been invited to enter—which they themselves knew of and which they could not reasonably assume that she knew of or by reasonable use of her faculties would observe, and (3) such failure to exercise reasonable care, in either or both respects, constituted a proximate cause of her fall. (Restatement, Second, Torts, Ch. 13, Sec. 341; Prosser, Torts, 3d Ed., Ch. 11, Sec. 60, p. 388; 2 Harper and James, Laws of Torts, Sec. 27.11, p. 1476; James, Tort Liability of Occupiers of Land: Duties owed to Licensees and Invitees, 63 Yale L. J., pp. 605, 611, 612.) See, also *Mistretta v. Alessi,* supra; *Kermarec v. Compagnie Generale,* 358 U. S. 625, 3 L. Ed. 2d 550, 79 S. Ct. 406; *Mitchell v. Legarsky,* 95 N. H. 214, 60 A. 2d 136; *Choate v. Carter,* supra; *Murdock v. Petersen,* 74 Nev. 363, 332 P. 2d 649; *Martin v. Henson,* 95 Ga. App. 715, 99 S. E. 2d 251; *Hennessey v. Hennessey,* supra; *Howard v. Howard,* supra, and *Potts v. Amis,* 62 Wash. 2d 777, 384 P. 2d 825.

Considering the plaintiff's evidence fairly and impartially, in the light most favorable to her and giving her all the reasonable inferences for which that evidence supplies a foundation, when measured by the foregoing authorities, it is clear the plaintiff was not injured from any defect, obstacle or pitfall existing in the physical condition of the land itself; the kitchen floor and the vinyl linoleum were in good repair. Likewise, it is clear that as a result of the defendants' active conduct—dropping the ice cubes and kicking them under the refrigerator where they were permitted to melt forming a "puddle of water" on the floor in the immediate vicinity of steps leading down into the family room—they created a condition upon the premises which they themselves regarded as dangerous, resulting in the plaintiff being subjected to increased hazard and danger. In my judgment, their conduct constituted active negligence and the authorities heretofore cited so hold.

No claim is made the plaintiff's invitation did not permit her to visit the family room, and there is nothing to indicate they should

expect she would discover the water or realize the danger of its presence. The evidence is to the contrary; she was weak and frail, and her vision was limited. In short, under the circumstances which attend, the defendants created a dangerous condition on the premises subjecting the plaintiff to increased hazard and danger, which, coupled with their failure to warn, in and of itself became active negligence.

In view of the foregoing, the district court erred in dismissing the action and in not submitting the question to the jury under proper instructions.

Before concluding, I feel compelled to say the view of hospitality taken by the court that the only duty owed to a social guest is to refrain from willfully, intentionally or recklessly injuring him finds no place at the social firesides of this state. In the classification of the status of persons coming upon the premises of the owner, a social guest should not be left destitute of legal protection, or hanging on the cliff of such frozen inhospitality. Why, in common sense, should a person who is warmly and cordially invited to his host's home for his pleasure (otherwise the invitation would not be extended) be afforded no more protection under the law than that of a trespasser. More and more, courts and authoritative text writers are coming to the convincing conclusion that, based upon an increasing regard for human safety and the prevalent purchase of insurance by homeowners to protect themselves from liability with respect to the management, use and the condition of their property, a social guest should be given more protection than a mere licensee.

The fact that an owner may be liable under a theory of active negligence to a social guest, if properly applied, is a breakthrough from the traditional view of the landowner's duty. Although insurance is not mentioned in the trial of a case, it should undoubtedly have some effect upon the duty of the landowner. As insurance purchased to protect the homeowner from liability from those coming upon his premises, becomes more and more prevalent, it should affect the standard of care. In my judgment, it would seem to follow that the more homeowners who buy insurance to protect themselves, a corresponding higher duty of host responsibility should follow. (Vol. 12 Kan. L. Rev. pp. 571-574.)