AMY CAREY, *Appellee*, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, *Appellant*.

No. 16,884.

SYLLABUS BY THE COURT.

RAILROADS—*Injury to Person upon the Track—Signals—Contributory Negligence*. A number of workmen were employed in uncovering rock in a quarry operated by a railroad company, their duties not involving loading or handling the cars; several loaded cars awaiting removal were standing upon a spur track near where they were at work; on account of a rain all but one of them entered the cars; he took shelter beneath a car, and was run over and killed when a freight train backed into the cars in the process of picking them up; his widow recovered a judgment, the jury finding that the railroad company was negligent in failing to give proper warning of the approach of the train. *Held*, that the defendant owed no duty to the deceased to give such a warning, and that his own conduct constituted negligence as a matter of law.

Appeal from Morris district court. Opinion filed March 11, 1911. Reversed.

*M. A. Low*, and *Paul E. Walker*, for the appellant.

*R. M. Hamer, W. C. Harris*, and *C. A. Crowley*, for the appellee.

The opinion of the court was delivered by

MASON, J.: G. W. Carey was run over by a car of the Chicago, Rock Island & Pacific Railway Company, receiving fatal injuries. His wife recovered a judgment against the company, and it appeals.

Carey was employed by the defendant as a workman in a stone quarry two miles west of Dwight. A spur track twenty rods long ran from the main line in a southwesterly direction to the quarry, curving around an embankment which cut off a view of the main track east of the switch. The spur track was used exclusively for setting in empty cars to be loaded, and shifting loaded cars to the main line. The

cars upon it were handled only by one train, an east-bound daily freight, due about eleven o'clock in the morning. Usually the train would stop west of the spur, uncoupling the engine to do the necessary switching. Infrequently it would pass without stopping, in which case it would stop on its east-bound trip on the following morning and do the work. Very infrequently it would go through to Dwight and after an interval back up from there and take out the loaded cars and set in empty ones. On the day of the accident two crews of workmen were engaged in the quarry. That to which the deceased belonged were stripping or uncovering rock near the switch; their duties did not require them to be upon the track; they had nothing to do with loading or handling the cars; the other crew were quarrying and loading near the west end of the spur. The freight train referred to was about two hours late. It ran past the switch to Dwight, and later backed up to pick up some cars. Shortly before this a hard rain had set in. Four loaded cars were standing on the spur near the switch, close to, but not touching, each other. All of the crew to which the deceased belonged, except himself, took refuge in the third car from the switch. He, as found by the jury, took shelter under the fourth. The workmen of the other crew retired to a box car provided by the company, used as a tool house and office, situated near the end of the spur, but off the track. The train backed into the nearest of the cars with such force as to push them together and move the furthest one about a car's length. Carey was thereby run over and fatally injured. A special finding stated that the negligence of the defendant consisted in not giving a proper warning signal.

We conclude that the plaintiff can not recover because the evidence and findings do not disclose any actionable negligence of the defendant, but on the other hand do establish that the accident resulted

from the want of ordinary care on the part of the deceased.

In the absence of a statute a railway company is not required to give warning of the approach of a train except where it has reason to anticipate that persons will be upon the track. (33 Cyc. 782.) Here the trainmen owed no such duty to Carey, inasmuch as they did not know of his presence and had no reason to suppose that any person would be under the cars. Liability for negligence can result only from the violation of a duty owed to the person injured. (See *Express Co. v. Everest,* 72 Kan. 517, 522, and cases there cited.) Shortly after the impact a brakeman saw one of the workmen inside a car and heard the voices of others. The conductor also saw some men in the car about the same time. But if there was then time to give warning to these men, and the company was guilty of negligence toward them, its neglect in this regard did not extend to the decedent. In answer to the question whether any of the train crew knew that Carey was under the car the jury answered that the trainmen did not know Carey. The reasonable interpretation of the answer, in view of the question, is that it was intended to mean that the trainmen did not know that Carey was under the car. But in any event the effect must be the same, for there was no evidence that he was seen by any of the train crew.

Assuming, however, that the company may have been negligent, we think the conduct of the deceased was such as to prevent a recovery. The rule is generally if not universally accepted that for one unnecessarily to remain upon a railroad track is negligence as a matter of law; none the less so because customary warnings of the approach of a train may have been omitted. In getting under a car which had been loaded and only awaited the convenience of the company to be hauled away the deceased was clearly within this rule. The fact that in this instance the

train that did the switching first ran on to Dwight and then backed up, instead of doing the work as usual upon reaching the spur track from the west, does not affect the matter. At the most, such a departure from custom could have no greater effect than an omission to perform some positive duty, and would not render the defense of contributory negligence unavailable. (*Dyerson v. Railroad Co.*, 74 Kan. 528, 533, 534.)

The contention is made that the evidence was sufficient to justify a finding that the company's employees were guilty of misconduct amounting to wantonness in failing to give a warning of the approach of the train, since two of them knew that men were in or about the cars to be picked up. We do not think the fact that the trainmen saw a workman in one of the cars, and heard the voices of others, was sufficient to suggest to them the probability of anyone being under the cars, or in a similar position.

The judgment is reversed and the cause remanded, with directions to render judgment for the defendant.