Potter Title and Trust Company *v.* Young, Appellant.

240

Argued March 19, 1951. Before Drew, C. J., Stern, Stearne, Jones, Bell, Ladner and Chidsey, JJ.

*Robert W. Smith*, with him *Smith, Best & Horn*, for appellants.

*J. Thomas Hoffman*, with him *Arnold L. Biron* and *Paul M. Robinson*, for appellees.

Opinion by Mr. Justice Horace Stern, April 17, 1951:

The question here concerns the extent of the duty owed to a gratuitous licensee by a possessor of land.

The accident involved happened nearly ten years ago. The Commonwealth was then engaged in building a state highway between North Washington and Apollo. The eastern slab of concrete had been laid; the western half of the road was being graded preparatory to the concrete being laid upon it. George M. Evans, since deceased and now represented on the rec-

ord by the executors of his estate, was a subcontractor on the work supplying the dry concrete mix. He employed 25 to 30 trucks, which hauled material from a point a number of miles distant and entered the completed half of the road about a quarter of a mile below the concrete mixer, which was then situated some two miles north of North Washington; upon coming to within about 600 feet of the mixer they would turn and back the remaining distance so as to be able to discharge their loads into it. At a point about half way on this backward journey a grader was in operation on the western half of the road leveling the ground on which the concrete was to be applied; this grader occupied the full width of the half of the road and a tool box projected from it about a foot or more over the concreted portion of the highway. The grader had run into some rock and had been stopped by the operator in order to grease the bearings.

David Jones, who has died since the accident and is represented on the record by the administrator of his estate, was a coal miner, and he, together with a companion, one Leskey, walked some 7 or 8 miles to North Washington in order to obtain employment there in a coal mine. Being unsuccessful the two men then walked north from North Washington hoping to get a job on the road construction. As they passed the point where Summerville, the operator of the grader, was working on it, Jones stopped momentarily to talk to him while Leskey kept walking ahead looking for the "boss". The purpose of Jones in stopping to converse with Summerville does not appear, but it may have been to obtain information as to where the "boss" could be found. At that moment one of the trucks, backing down from the turning point 300 feet away, ran into both Jones and Summerville with the result that Jones suffered a compound fracture of both bones in his right leg. In the present suit to recover damages

for his injuries his estate obtained a verdict in its favor, and the court below refused defendants' motions for new trial and for judgment n.o.v.

The driver of the truck testified that he looked before starting backward but saw no one on the road. As he proceeded he kept looking down the left side of the truck so as to keep it running at a distance of about 8 inches from the eastern edge of the road; of course the body of the truck prevented his seeing the portion of the grader which extended over the concrete half of the road, or, indeed, any part whatever of the highway to his rear except immediately along the eastern edge. He did not sound his horn, there was no one on the rear of the truck to give any warning of its approach, and there was no flagman stationed on the road to direct the traffic of the trucks as they followed one another at about 5 minute intervals on their backward trips to the mixer.

The legal status of Jones was that of a gratuitous licensee,—that is, a person permitted to enter upon the land of another solely for his own purposes, in this case in search of a job. What is the duty of the possessor of the land to such a licensee? Although the distinction may not be entirely clear under every given set of circumstances, the authorities uniformly differentiate in that connection between what, for want apparently of a better terminology, they designate as "passive" negligence and "active" negligence. Generally speaking, the term "passive negligence" denotes negligence which permits defects, obstacles or pitfalls to exist upon the premises, in other words, negligence which causes dangers arising from the physical condition of the land itself. "Active negligence", on the other hand, is negligence occurring in connection with activities conducted on the premises, as, for example, negligence in the operation of machinery or of moving vehicles whereby a person lawfully upon the premises

is injured. In *Weaver v. Carnegie Steel Company*, 223 Pa. 238, 72 A. 552, a group of persons, including plaintiff, visited a steel plant for their own pleasure, the Steel Company furnishing them with a guide. Plaintiff, stepping outside of the path chosen, fell through an aperture in the floor and was injured. It was held that he, being a mere licensee, assumed the ordinary risks of such a visit and could not recover for an accident resulting from a condition of the premises. So in *Schiffer v. Sauer Co.*, 238 Pa. 550, 86 A. 479, where the plaintiff, seeking employment, entered a building and was injured by an explosion of gas resulting from an omission to plug or cap openings in the gas line in the building. It was held that whatever negligence existed was "simply passive", and therefore plaintiff, who was a mere licensee, could not recover in the absence of proof of any wanton injury inflicted upon him. So in *Onstott v. Allegheny County*, 338 Pa. 206, 12 A. 2d 785, plaintiff was injured by being thrown from a horse which unexpectedly bolted from a race track through an open gate; suit for damages was instituted on the ground that plaintiff had not been warned that the gate was open. The court held that he, being a gratuitous licensee, was not entitled to recover, in the absence of proof of intentional or wanton injury, for any dangerous, but obvious, condition of the premises. Again, in *Parsons v. Drake*, 347 Pa. 247, 32 A. 2d 27, it was held that a possessor of land owed no duty to a gratuitous licensee to have the premises in safe condition; in that case plaintiffs stood on the balcony of a hotel watching a parade; a portion of the balcony floor gave way with the result that plaintiffs fell to the street and were injured; it was held that they could not recover from the hotel proprietor. But, on the other hand, in *Davis v. Tredwell*, 347 Pa. 341, 32 A. 2d 411, plaintiff was standing on land in the possession of the defendant and was run into and injured by an auto-

mobile which backed against her and knocked her to the ground, no warning of its approach being given. This Court said, through Mr. Justice PARKER (pp. 344, 345, A. p. 413) : "The court below properly refused to charge the jury . . . 'that the plaintiff . . . is merely a licensee on the premises . . . and that [defendant] could only be liable for wilful or wanton negligence'. This point overlooked the facts and also the legal distinction between harm caused by active negligence and that arising from natural or artificial conditions on real property. . . . The owner of the property owes even to a licensee a duty to use reasonable care to avoid injuring him through active negligence: Kremposky v. Mt. Jessup Coal Co., Ltd., 266 Pa. 568, 109 A. 766; Kapuscianski et al. v. Phila. & R. C. & I. Co., 289 Pa. 388, 391, 137 A. 619."

The distinction that has thus been established, therefore, is that, while the possessor of the premises is not generally liable to a gratuitous licensee, in the absence of wilful or wanton injury, for an accident due merely to existent conditions upon the premises, he *is* liable for injury occasioned by any affirmative or "active" negligence on his part in connection with activities conducted on the premises. A large number of cases in the several jurisdictions, illustrating this distinction, are to be found in 49 A. L. R. 778 et seq. and 156 A. L. R. 1226 et seq. Applying this principle, it is clear that, if Jones had been injured as the result of a dangerous or unsafe condition of the highway under repair, he would not, as a mere licensee, have been entitled to recover for the injury thus sustained; but, since his injury resulted from "active" negligence in the operation of a moving vehicle, and since the duty owed him under such circumstances was not merely to refrain from wilful or wanton conduct but to exercise ordinary care, recovery may be had. (See *Yamauchi v. O'Neill,* 38 Cal. App. 2d 703, 102 P. 2d 365). Whether the truck

was in fact operated negligently was for the determination of the jury, and their resolution of that question in favor of plaintiff was justified by the evidence. While there were barriers at either end of the roadway while the construction was in progress, and "no trespassing" notices were posted, there would be nothing unusual in persons nevertheless entering upon it on various kinds of missions, as, for example, to communicate with someone engaged in the work, or, as in the present instance, to seek employment there. The driver of the truck, therefore, was bound to realize the likelihood that not only the operator of the grader but other persons also might be standing at or near the grader or walking at other points on the roadway; his duty to have this in contemplation was increased by the fact that, according to the testimony of the operator of the grader, the trucks frequently, in passing it, struck the part of it which projected over the concrete half of the highway, in fact did this "every hour and a half or two hours, hitting the tool box and knocking the grader off its track." It was said by the late Chief Justice MAXEY *in Caulton v. Eyre & Co., Inc.*, 330 Pa. 385, 388, 389, 199 A. 136, 138; "Backing a motor vehicle any distance unless the driver is absolutely certain there is no person in his pathway involves a risk, as countless accidents on sidewalks and elsewhere resulting from that practice attest. . . . the truck should have proceeded down the alley with more caution, and particularly its horn should have been sounded. The simplest elementary caution should have dictated that. A man who backs a motor vehicle any distance when he cannot see what is behind him and has no one present to tell him what is behind him, is, figuratively speaking, taking a 'leap in the dark', and to take such a leap . . . is to invite the injury of one's self or of others . . .". The backing of a vehicle necessarily entails more or less limitation of view by the

driver over the road to be traversed, and thus demands a corresponding increase of vigilance on his part to avoid causing injury to persons likely to be in his path. Nor could Jones properly be held guilty of contributory negligence as a matter of law. It was not shown that he had been standing on the highway next to the grader for any appreciable length of time before being struck; his purpose in stopping to talk to the operator was presumably proper and reasonable. He received no warning whatever of the oncoming of the truck; its tires passing over the concrete may have made little, if any, sound, especially to one momentarily absorbed in conversation.

Judgment affirmed.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

The road on which plaintiff was injured was blocked off by barriers at each end; "No trespassing" signs were posted; even a child could see the road was under construction. Everyone approaching it necessarily realized that he should not enter and that if he did enter, he would certainly assume the risks which every prudent man knows arises when road construction work is being carried on in a prohibited area. The driver of defendant's truck looking behind him did not and, because of the construction of the truck, could not see the plaintiff in the position where he stood; and the driver had no reason to anticipate that plaintiff or any other person, ignorant of the work thus carried on, would be standing in the roadbed in violation of the barriers and the signs prohibiting entrance.

What was the defendant's duty under the facts and circumstances of this case? The majority having laid down in a learned opinion the standard of care which

a possessor of land owes to a gratuitous licensee where "active negligence" is involved, namely, "reasonable care", disregards that standard in attempting to apply it to the facts in this case and imposes instead a standard which is so impractical and financially burdensome as to be *highly unreasonable.* The majority opinion requires that defendant's drivers (1) have to blow a horn (to warn an unanticipatable person) every time they back their truck (25-30 trucks) or wheel their steam shovel; and (2) defendant has to employ another workman on the rear of this (and every other one of the 25) truck(s); and (3) has to employ a flagman to direct traffic for trucks which were backing and for machines which were wheeling. This seems to me to be so impractical and burdensome as to create an intolerable duty or standard of care, which is supported neither by practice, reason or authority.

What clearly distinguishes this case from *Davis v. Tredwell,* 347 Pa. 341, 32 A. 2d 411 and *Caulton v. Eyre & Co., Inc.,* 330 Pa. 385, 199 A. 136, and other cases cited in the majority opinion, where the Court held that the question of negligence was for the jury, is that this defendant had no reason to anticipate (what the majority calls) "the likelihood" that plaintiff or any person not working there would be standing in the roadbed in violation of the barriers and signs prohibiting entrance. I would therefore hold that there was no failure on the part of the defendant to exercise the care required under the facts in this case and therefore no proof of negligence.

So far as contributory negligence is concerned, the duty of the plaintiff was manifest—he had to watch out for all the machines and trucks which every prudent man knows will likely be intermittently and suddenly driven or swung forward, sideways and backward, on a construction job. The plaintiff stopped to

engage in what the majority imagines was proper conversation. While conjecture cannot take the place of proof, even proper conversation cannot eliminate plaintiff's duty of vigilance or entitle him to be blind and deaf and dumb. Plaintiff obviously was not watching and could not possibly have been watching, as was his duty, the trucks and machines which he could easily see and hear were working on this job—especially defendant's truck of which plaintiff had a clear, uninterrupted view for 300 feet. Obviously, therefore, he was guilty of contributory negligence as a matter of law.

While no citation of authorities seems necessary for such a plain proposition, *Biedrzycki v. Schrader, Inc.,* 347 Pa. 369, 32 A. 2d 31 supports our opinion. In that case the Court in holding that plaintiff's contributory negligence barred his recovery said (page 371) : "Restatement, Torts, sec. 341: 'A possessor of land is subject to liability to licensees, [whether business visitors or gratuitous licensees,] for bodily harm caused to them by his failure to carry on his activities with reasonable care for their safety, *unless the licensees know or from facts known to them, should know of the possessor's activities and of the risk involved therein.'* " (Italics supplied.)

Comment *a* of Section 341 further states: "the mere fact that the possessor has consented to his entry gives [the licensee] no right to expect that the possessor will change the method in which he conducts his activity so as to secure the licensee's safety. If he knows of the nature of the activities conducted upon the land and the manner in which they are conducted, he has all that he is entitled to expect, that is an opportunity for an intelligent choice as to whether or not the advantage to be gained by coming on the land is sufficient to justify him in incurring the risks incident thereto."

Comment *d*: "Account is also to be taken of the fact that a licensee must accept or reject the possessor's consent to enter the land under the conditions which are known to him *or which he could discover by the use of his senses. The possessor, therefore, is not required either to refrain from or to give warning of activities dangerous to the licensee if they are, to the knowledge of the licensee, so customarily carried on upon the land that the licensee should be on the alert to discover and avoid them.*" (Italics supplied.)

Under the facts in this case I would hold: (1) that no negligence was proved; and (2) that plaintiff was guilty of contributory negligence as a matter of law.

For these reasons I dissent from the majority opinion and would here enter judgment for defendant n.o.v.