## Lacaria, Admr., Appellant, v. Hetzel.

310

Argued March 24, 1953. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Harry Alan Sherman,* with him *David Weiss,* for appellant.

*Robert W. Smith,* with him *Smith, Best & Horn,* for appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, April 13, 1953:

As the ground of decision in this case we quote once more the statement of the late Chief Justice MAXEY in *Caulton v. Eyre & Co. Inc.,* 330 Pa. 385, 388, 389, 199 A. 136, 138, as follows: "Backing a motor vehicle any distance unless the driver is absolutely certain there is no person in his pathway involves a risk, as countless accidents on sidewalks and elsewhere resulting from that practice attest. . . . the truck should have proceeded down the alley with more caution, and particularly its horn should have been sounded. The simplest, elementary caution should have dictated that. A man who backs a motor vehicle any distance when he cannot see what is behind him and has no one present to tell him what is behind him, is, figuratively speaking, taking a 'leap in the dark,' and to take such a leap . . . is to invite injury of one's self or of others . . ."

To this sage observation we added, in *Potter Title and Trust Co. v. Young*, 367 Pa. 239, 245, 246, 80 A. 2d 76, 80, that "The backing of a vehicle necessarily entails more or less limitation of view by the driver over the road to be traversed, and thus demands a corresponding increase of vigilance on his part to avoid causing injury to persons likely to be in his path."

The decedent, Pasquale Lacaria, was employed as a laborer by the Johnson Construction Company, which was engaged in paving a two-lane state highway extending some nine miles north from Greensburg in Westmoreland County. By August 9, 1949, the work had progressed to a point where the concrete had been laid in the west lane, and the east lane was being graded preparatory to the concrete being poured upon it, for which purpose a mixer was situated on the roadway about 4 or 5 miles up from Greensburg. Defendant, Clyde W. Hetzel, was a sub-contractor owning and operating a dual-wheel dump truck and engaged in hauling to the mixer a material known as "batch." He would obtain it some 4 or 5 miles to the north and carry it down the paved portion of the highway to a point within about 800 or 900 feet of the mixer; there a flagman would direct him to turn the truck around and run it backward the remaining distance to the mixer, into which he would then dump its load. Defendant had been operating his truck in this manner for three days prior to the accident which gave rise to the present suit. His practice was to stand with his left foot on the running board, his right foot in the cab, and his right hand on the steering wheel; as his truck proceeded in reverse at a rate of about two miles an hour he would lean out and look along the left side of the truck. He admitted that in this position he could not see to the right of the truck at all and was "almost totally blind" to what was happening on that side. As

he was proceeding backward on the occasion in question and was some 250 to 500 feet north of the mixer he felt a slight bump at the rear of the truck; he jumped immediately into the cab in order to bring the truck to a halt, whereupon he felt a second bump and stopped the truck immediately. On looking out he saw the decedent, Pasquale Lacaria, lying in front of the truck. Evidently both the rear and the front wheels had gone over him. Defendant sprang out, ran up to him, and saw that he was dead. Upon subsequent examination it was found that both his legs and his skull were fractured, his chest and clavicle were crushed, his jugular veins were severed, he had internal injuries, and his face was "out of shape" and bloody. The truck, when loaded, had an overall weight of about 9 tons.

The present action was instituted by decedent's son, Nick J. Lacaria, as administrator of his estate, and on behalf of himself and a daughter of decedent. After the conclusion of the testimony offered by plaintiff the trial judge entered a nonsuit which the court en banc subsequently refused to remove. It was entered on the theory that plaintiff had not described or visualized what actually happened in sufficient detail to enable the fact-finding tribunal to conclude that defendant was guilty of actionable negligence. In its opinion the court stated that no witness to the accident was called other than defendant himself, that no one had seen decedent alive for several hours before the accident, that it was not shown that it was the truck operated by defendant which struck him or indeed that he was struck by any truck at all, that there was no evidence as to how he came to be on the highway at that point and why he did not take care to avoid being hit by such a truck.

Notwithstanding this alleged dearth of testimony, we are clearly of opinion that the evidence was amply

sufficient to entitle plaintiff to have the case submitted to a jury.

Was decedent struck by the truck operated by defendant? Pa. R. C. P. No. 1045(b) provides: "A party who fails to file a responsive pleading shall be deemed to admit all averments relating to the identity of the person by whom a material act was committed, the agency or employment of such person or the ownership, possession or control of the property or instrumentality involved." Here the complaint averred that the decedent "was struck by a truck owned and operated by defendant." No affidavit of defense was filed and therefore, under the rule, defendant must be deemed to have admitted that he was the person by whom the act was committed and that the instrumentality involved was his truck, of which he was in possession and control. True, it was held in *Discovich v. Chestnut Ridge Transportation Co.,* 369 Pa. 228, 85 A. 2d 122, that in order to take advantage of this rule the specific paragraphs of the pleading which allege agency and control must be offered in evidence, which was not formally done in the present case. However, plaintiff's counsel did note on the record that no affidavit of defense had been filed and he stated therefore, without objection on the part of defendant's counsel, that there was no dispute in the case that the truck involved in the accident was owned by defendant and that he was the one operating it at the time decedent came to his death. Be that as it may, defendant himself on cross-examination frankly admitted facts the only possible inference from which was that it was his truck which struck and ran over the decedent. In addition to his testimony already quoted in regard to his feeling the two bumps and to the fact that decedent was immediately thereupon found lying *in front of* the truck, defendant testified that he was caught on "the

right side of me as I was backing up"; that "if I had seen him I don't think I would have hit him." The court, apparently adopting a suggestion of defendant's counsel, states that there was no proof that deceased was alive when struck by defendant's truck, that he might have fallen dead while crossing the highway immediately to the rear of the truck. A plaintiff, however, is not obliged to eliminate every possibility that the ingenuity of opposing counsel may suggest. The terrible wounds suffered by decedent indicate that he was struck and run over by a truck, and, as already pointed out, the truck that hit him was admittedly the one operated by defendant. The possibility that he might have had a heart attack at the very instant before the truck struck him or that he might previously have been lying dead on the road in the presence of all the workmen there around him, is certainly too remote and fanciful to warrant serious consideration. The court, pointing out that there was a pool of blood on the paved portion of the highway within a foot of the unfinished portion, argues that if, as defendant testified, his truck was proceeding along the westerly side of the road, it would be difficult to understand how the right side of the truck could have extended toward the east far enough to have struck the decedent at that point. This argument, however, assumes, wholly without warrant, that the blood was at the exact spot where the decedent must have been standing when struck; it overlooks the fact that a man is some 5 or 6 feet tall and that the decedent may well have been in the middle of the paved portion of the highway when hit by the truck and have fallen across the road with his head reaching to where the pool of blood was subsequently observed.

Was defendant negligent? Certainly a jury might so determine. He candidly admitted that he knew there

were men working on the highway and he had been warned to watch out for them. Nevertheless he proceeded backward without sounding a horn or giving any other warning, without any helper on the truck to direct him, and himself in a position where he could see only along one side of the truck and was blind as to the other side, which, as it happened, was the side on which decedent was struck.

Was decedent guilty of contributory negligence? Being dead, the factual presumption is that he used due care. The accident happened within 5 to 10 feet of the place where there was a grader in operation leveling the lane of the highway which still remained unpaved, and where he may have been engaged in working at the time; or he may have been temporarily standing or walking down the highway on an errand with his back to the approaching truck. There was no evidence whatever to indicate that he was a trespasser, that he was at a place where he had no right or reason to be or that he was not properly conducting himself. He may well have been so intent on the work in which he was engaged as not to have heard the approach of the truck. At any rate the burden to prove contributory negligence was on defendant; plaintiff's own case did not reveal any. It is argued that there were many trucks in operation along the highway, but there is no evidence that at the time of the accident or immediately preceding it any other truck actually passed at or near the point of the occurrence.

Counsel for defendant suggests that plaintiff's only remedy is under the Workmen's Compensation Act; this obviously loses sight of the fact that the present action is not against an employer but against the person who actually committed the tort. No person, other than possibly an employer himself, may negligently injure another without being responsible for damages:

316

*Denton v. Michel's Bakery Co.*, 363 Pa. 502, 504, 70 A. 2d 284, 285; *Beam v. Pittsburgh Railways Co.*, 366 Pa. 360, 364, 77 A. 2d 634, 636. On the whole, the case is strikingly similar in many respects to *Potter Title and Trust Co. v. Young*, 367 Pa. 239, 80 A. 2d 76, and *Bennett v. Boney*, 367 Pa. 249, 80 A. 2d 81, in each of which recovery was allowed.

The decree refusing to take off the compulsory non-suit is reversed, and a new trial is granted.