No. 57,534

BETTY BOWERS, *Appellant*, v. RICHARD OTTENAD and GERALD D. PETERSEN, *Appellees*.

(729 P.2d 1103)

Opinion filed December 5, 1986.

*Richard N. Roe*, of Lowe, Terry & Roberts, of Olathe, argued the cause and was on the briefs for appellant.

*Paul Hasty, Jr.*, of Wallace, Saunders, Austin, Brown & Enochs, Chtd., of

Overland Park, argued the cause, and *Jeffrey L. Lauersdorf*, of the same firm, was with him on the brief for appellee Richard Ottenad.

*Thomas R. Buchanan*, of Shook, Hardy & Bacon, of Overland Park, and *Timothy M. O'Brien*, of the same firm, and *Bradley McTavish*, of Kansas City, Missouri, were on the briefs for appellee Gerald D. Petersen.

*Dan L. Wulz*, of Bryan, Lykins, Hejtmanek, Hulsey & Wulz, P.A., of Topeka, was on the brief for Kansas Trial Lawyers Association, *amicus curiae*.

*Marla J. Luckert*, of Goodell, Stratton, Edmonds & Palmer, of Topeka, was on the brief for Kansas Association of Defense Counsel, *amicus curiae*.

The opinion of the court was delivered by

HOLMES, J.: This appeal is before the court for review of the unpublished opinion of the Kansas Court of Appeals in *Bowers v. Ottenad*, No. 57,534, filed March 6, 1986. Betty Bowers filed this action to recover damages for extensive burns sustained in an accident at the home of Richard and Joyce Ottenad. The trial court found as a matter of law that Bowers was a licensee upon the premises and the jury, failing to find any wanton conduct upon the part of the defendants, returned a verdict for the defendants. The Court of Appeals affirmed the trial court judgment and we granted the petition for review filed by Bowers.

The facts are not in dispute. On the evening of March 13, 1982, the gourmet group of an organization known as the Johnson County Young Matrons, Inc., gathered for dinner at the home of Richard and Joyce Ottenad. As was their custom, the gourmet group met periodically at the home of one of their members for a social gathering of dinner and drinks. On each occasion three members of the group would act as co-hostesses for the evening, one of whom was an occupant of the premises where the event was to be held. On the fateful evening, plaintiff/appellant Betty Bowers, Alice Petersen, and Joyce Ottenad were the co-hostesses. Following dinner, Bowers and appellees Gerald D. Petersen and Richard Ottenad were preparing flaming Irish coffees to be served as after-dinner drinks. One hundred ninety proof grain alcohol was being used by the trio to create the flame upon the coffee. While mixing the coffees, the vapors from the alcohol bottle ignited and fire burst forth in the form of a "fireball." The flames struck appellant and she suffered severe burns.

In this action filed against Mr. and Mrs. Ottenad and Dr. and Mrs. Petersen, the court granted summary judgment in favor of Joyce Ottenad and Alice Petersen, the other two co-hostesses.

No appeal is taken from that judgment and they are not involved in the case now before this court. The trial court also ruled as a matter of law that appellant was a licensee for the purposes of establishing the duty owed to her under the premises liability or status classification doctrine and therefore was not entitled to recover unless the jury found that Richard Ottenad or Gerald Petersen was guilty of wanton negligence resulting in appellant's injuries. No contention was made that the injuries resulted from willful conduct of the defendants. The jury rendered a verdict for the defendants and Mrs. Bowers has appealed. The Court of Appeals, based upon our existing case law, affirmed the trial court judgment and we granted the appellant's petition for review.

Appellant raises several issues, only two of which require consideration here. First, appellant contends that this court should abandon the common-law premises doctrine which establishes liability of a landowner or occupier of real property based upon the status of the injured party and adopt the traditional negligence standard of reasonable care under all the existing circumstances, at least to the extent of adopting such standard for licensees. Second, it is asserted that if this court does not consider it appropriate to abandon the existing premises doctrine we should follow the active negligence exception recognized by this court in *Montague v. Burgerhoff*, 150 Kan. 217, 92 P.2d 98 (1939).

As to the first issue, whether we should abandon the common-law doctrine of premises liability based upon the status of the injured party as a trespasser, licensee, or invitee, much has been written in recent years. This court has been asked on at least four occasions to abandon the premises liability or status classification doctrine of landowner or occupier liability and on each occasion a majority of the court has declined to do so. *Britt v. Allen County Community Jr. College*, 230 Kan. 502, 638 P.2d 914 (1982); *Zuther v. Schild*, 224 Kan. 528, 581 P.2d 385 (1978); *Gerchberg v. Loney*, 223 Kan. 446, 576 P.2d 593 (1978); *Frazee v. St. Louis-San Francisco Rly. Co.*, 219 Kan. 661, 549 P.2d 561 (1976). We see nothing to be gained by rehashing the pros and cons of the argument as they are adequately covered in our existing cases. Suffice it to say, a majority of the members of this court remains of the opinion that there are compelling reasons

not to depart from the existing doctrine. The traditional common-law doctrine of premises liability based upon the status of the party injured or damaged as a trespasser, licensee, or invitee is approved and confirmed as the law of this state. We therefore decline to overrule the cases cited. For those interested in additional authority on the subject, comprehensive annotations may be found at 32 A.L.R.3d 508 and 22 A.L.R.4th 294. See also Westerbeke, *Survey of Kansas Law: Torts*, 27 Kan. L. Rev. 321, 334 (1979); and Comment, *Torts: Landowner Liability and Attractive Nuisance—Kansas Rejects the Modern Trend*, 18 Washburn L. J. 190 (1978).

Next, appellant argues, in the alternative, that if this court does not see fit to abolish the premises liability or status classification doctrine, we should at least recognize and apply the so-called "active negligence" exception to licensees upon the premises.

A number of jurisdictions, which have retained the common-law status classification or premises liability doctrine, have recognized and adopted an exception in the case of licensees based upon what is often called a distinction between active and passive negligence. At the outset, a clarification of those terms would appear to be appropriate. The terms are often confused and some courts have recommended that the distinction should not be couched in language of active as opposed to passive negligence, but in terms of whether the condition of the premises is the cause of injury or damage as opposed to that caused by the activity being carried on upon the premises. In *Ragnone v. Portland School Dist. No. 1J*, 291 Or. 617, 633 P.2d 1287 (1981), the court explained the dichotomy:

"Stating the duty in terms of active or passive negligence has led to confusion. This case is illustrative. Both the trial court and the Court of Appeals erroneously equated active negligence with commission, passive negligence with omission. The term 'active negligence' or 'affirmative negligence,' as used in our previous decisions, refers to the negligent conduct of activities upon the land, and the term 'passive negligence,' as used in our previous decisions, refers to hazards arising from the physical condition of the land, the existence of which normally does not create liability in favor of an injured person. 'Active negligence' does not equate with commission; 'passive negligence' does not equate with omission. *See Elliott v. Rogers Construction*, 257 Or. 421, 479 P.2d 753 (1971) (highway contractor not liable to licensee injured because of condition of an unopened highway); *Blystone v. Kiesel*, 247 Or. 528, 532, 431 P.2d 262 (1967) (homeowner liable to licensee when homeowner was running down the hallway and collided with the licensee); *Burch v. Peterson*, 207 Or. 232, 234, 295 P.2d 868 (1956) (homeowner

not liable to social guest who was injured when a step gave way). It would be better if we cease to refer to 'active' or 'passive' negligence, and state the rule in terms of conditions upon or within the premises as contrasted with activities carried on upon the premises.

"Whether a school district is conducting activities at a public park not owned or controlled by the district or in a school gymnasium owned and controlled by it, the risk of injury from such activities to persons whose presence is known may be similar, even identical. The fortuitous circumstance that the plaintiff was standing on land belonging to the defendant is largely irrelevant in a case where injury arises from an activity, *Blystone v. Kiesel, supra,* 247 Or. at 532. While there may be cases in which it may be difficult to say, as a matter of law, whether the injury arose from a 'condition' of the premises, as distinct from an 'activity' carried on upon the premises, no such difficulty exists here.

"The plaintiff alleged that the defendant was negligent in conducting an activity without adequate supervision and without maintaining proper control. Although these allegations, in a sense, allege *omissions* to act, the carrying on of the activity without maintaining 'proper control' is no more an omission to act than is the driving of an automobile on a highway without maintaining 'proper control.' In view of the fact that the plaintiff was lawfully on the premises, whether she was an invitee or a licensee, under the authorities cited above, the defendant had an obligation to exercise reasonable care in the conduct of its activities." pp. 622-24.

In *Potter Title and Trust Co. v. Young,* 367 Pa. 239, 80 A.2d 76 (1951), a licensee lawfully upon the premises of the defendant was injured when struck by a truck on a construction project. The court, after citing several examples of "active" as opposed to "passive" negligence, explained the difference stating:

"The distinction that has thus been established, therefore, is that, while the possessor of the premises is not generally liable to a gratuitous licensee, in the absence of wilful or wanton injury, for an accident due merely to existent conditions upon the premises, he *is* liable for injury occasioned by any affirmative or 'active' negligence on his part in connection with activities conducted on the premises. A large number of cases in the several jurisdictions, illustrating this distinction, are to be found in 49 A.L.R. 778 et seq. and 156 A.L.R. 1226 et seq. Applying this principle, it is clear that, if Jones had been injured as the result of a dangerous or unsafe condition of the highway under repair, he would not, as a mere licensee, have been entitled to recover for the injury thus sustained; but, since his injury resulted from 'active' negligence in the operation of a moving vehicle, and since the duty owed him under such circumstances was not merely to refrain from wilful or wanton conduct but to exercise ordinary care, recovery may be had." p. 244.

Thus it appears clear that the use of the term active negligence as opposed to passive negligence, when applied to the exception recognized under the premises liability doctrine, does not refer to acts of commission as opposed to acts of omission, but refers to

activities upon the premises as opposed to the condition of the premises itself. That is, when liability is predicated upon the actions of the defendant occupier, as opposed to the conditions of his land, liability may arise from either an act of commission or an act of omission. For lack of better terms we will, throughout this opinion, continue to use the terms "active" and "passive" negligence as contemplated in *Ragnone* and *Potter Title and Trust Co.* and as, it is hoped, explained above. See 62 Am. Jur. 2d, Premises Liability § 77 for a further explanation and numerous examples of active and passive negligence.

In the instant case, appellant's injuries were not the result of any defective or dangerous property conditions existing at the Ottenad residence. Rather, the injuries were the result of the activity of appellant and appellees mixing the flaming drinks. The same unfortunate injuries could have been received at any other place or location under similar circumstances. The condition of the Ottenad property had absolutely no connection with the injuries suffered by plaintiff and, under the discussion and authorities cited above, we are faced with an issue of active negligence attributed to appellees. Thus, the issue squarely before the court is whether we recognize an active negligence exception to the premises or status classification doctrine insofar as licensees are concerned.

The issue is really not so much whether we adopt such an exception as one of recognizing and clarifying the law as it already exists. In *Montague v. Burgerhoff*, 150 Kan. 217, (*Montague I*) this court recognized for the first time an active negligence exception to the premises liability doctrine where there was injury to a licensee. Plaintiff Montague was a licensee lawfully upon the business premises of defendants Gilbert Burgerhoff and William H. Phillips, co-partners, doing business as Burgerhoff & Phillips Ice Company. As Montague was preparing to enter one of the defendants' buildings, Burgerhoff, who was engaged in an altercation with one of his employees, shoved or threw the employee out the doorway at the same time Montague began to enter through the doorway. The employee was shoved or thrown into Montague, knocking him down and causing personal injury. The case proceeded to trial on a theory of simple negligence based upon the acts of Burgerhoff in scuffling with his employee. At the close of plaintiff's evidence, defendants

demurred to it on the grounds that it did not prove any cause of action against the defendants. The demurrer to the evidence, which in modern practice is termed a motion for directed verdict, was overruled. The defendants proceeded with evidence and when the case was submitted to the jury it could not reach a verdict and was discharged. Defendant Burgerhoff then appealed the order overruling the demurrer to the evidence along with a pretrial order which had overruled a defense motion for judgment upon the pleadings. One of the arguments of the defendant Burgerhoff on appeal was that, as Montague was only a licensee on the property, the only duty owed to him was for Burgerhoff to refrain from any acts of willful or wanton negligence. In considering this argument, the court stated:

"In the first place the plaintiff was at least a licensee upon the premises. The contention of the defendant is that since plaintiff was a mere licensee on the premises that he only owed him the duty to refrain from acts of willful and wanton negligence. Defendant argues that there is no claim of such a high degree of negligence here.

"There is a further refinement of that rule, however. It is stated in *Brigman v. Construction Co.*, 192 N.C. 791, 136 S.E. 125. There the court said:

'The general rule is that a trespasser or permissive or bare licensee upon the property of another cannot recover for defects, obstacles, or pitfalls upon the premises, unless the injury shall result from willful or wanton negligence. . . . The strict rule exempting the owner of premises from liability to a licensee is ordinarily applied when the negligence of the owner is passive. If the owner, while the licensee is upon the premises in the exercise of due care, is affirmatively and actively negligent in the management of his property or business, as a result of which the licensee is subjected to increased hazard and danger, the owner will be liable for injuries sustained, as a result of such active and affirmative negligence . . .' (pp. 794, 795.)

"In that case a woman and her husband had come on the premises of the defendant in an automobile. While she was sitting in the car waiting for her husband a truck of the defendant company backed into the car in which she was sitting and injured her. In holding the company liable the court said:

'So, applying the established rules of liability to the facts of this case, even if the plaintiff was a trespasser or permissive licensee, as contended by the defendant, she was not injured as a result of existent conditions upon the premises or as a result of the passive negligence of omission, but she was injured by the actual negligence of the defendant in backing upon the car in which she was sitting, a loaded truck, without notice or warning, and while she was at a place which the defendant had designated as a parking place for automobiles.' (p. 797.)

"In *Corrigan v. Union Sugar Refinery*, 98 Mass. 577, 96 Am. Dec. 685, the plaintiff in going through a private passageway owned by the defendant was struck and injured by barrels thrown out the windows of the building by

defendant's agents. The court, in citing *Sweeny v. Old Colony Railroad Co.*, 10 Allen, 368, held the company liable, and said:

'Even if he was there under a permission which they might at any time revoke, and under circumstances which did not make them responsible for any defect in the existing condition of the way, they were still liable for any negligent act of themselves or their servants, which increased the danger of passing and in fact injured him.' (p. 578.)

(See, also, Note in 49 A.L.R. 778; also, 45 C.J. 804; also Restatement, Torts, § 341.)

"In this case the basis of liability is not some claimed defect in the premises, but is the act of defendant in knocking the discharged employee against plaintiff in such a negligent manner as to injure plaintiff.

"The judgment of the trial court overruling the demurrer of defendant to the evidence of plaintiff is affirmed." pp. 223-224.

Following our decision in *Montague I*, the case was retried and plaintiff recovered a verdict and judgment against Burgerhoff. The case was tried, in accordance with our decision in the earlier case, upon a theory of ordinary negligence with no apparent contention that the premises liability doctrine was applicable or that Burgerhoff was guilty of any willful or wanton actions. Burgerhoff again appealed and in *Montague v. Burgerhoff*, 152 Kan. 124, 102 P.2d 1031 (1940), (*Montague II*) this court unanimously upheld the verdict and judgment. The court stated:

"Defendant urges plaintiff did not plead the negligence relied upon now. The contention is not well taken. The petition sufficiently pleaded the facts and circumstances out of which the injury arose. It was sufficient to sustain a verdict rendered on the ground of negligence. . . .

. . . .

". . . The subject of defendant's liability for negligence toward the plaintiff was treated in the previous case [*Montague I*] and need not be repeated here. . . .

". . . The jury determined he [Burgerhoff] was liable on the theory of negligence." pp. 128-29.

Thus it appears clear that in 1940 this court had recognized and was committed to the active negligence exception to the premises liability doctrine insofar as licensees were concerned. While the exception recognized in the *Montague* cases has never been specifically overruled, our court in recent decisions has declined to follow its holdings in *Montague I and II* and therefore a review of the cases since is deemed advisable.

It was not until the decision in *Ralls v. Caliendo*, 198 Kan. 84, 422 P.2d 862 (1967), that the rule of *Montague I* was again mentioned by this court. In *Ralls* the plaintiff was a social guest

at a Christmas dinner party at the home of the defendants, Mr. and Mrs. Caliendo. Plaintiff, eighty-five years of age, slipped and fell in the defendants' kitchen. It appears the cause of the fall was water upon the floor either from melting ice cubes dropped while defendants were preparing drinks or from the dog's water dish. In either case defendants were aware of what Mr. Caliendo testified was a "dangerous condition." The district court sustained a motion to dismiss at the close of all the evidence. The trial court determined that Mrs. Ralls was a social guest and that, as no willful, wanton, or reckless conduct was shown, the plaintiff was precluded from recovery. This court affirmed the trial court on the same basis. In his concurring and dissenting opinion, Justice Fatzer stated:

"Assuming, *arguendo*, the plaintiff, by reason of the express invitation to attend the family Christmas dinner at the defendants' home, was nothing more than a mere licensee, the case should be reversed and remanded for a new trial.

"This court has refined the rule with respect to the duty an owner of land owes to a licensee, at least to the extent that if the owner, while the licensee is upon the premises in the exercise of due care, is actively negligent in the management of his property, as a result of which the licensee is subjected to increased hazard and danger, the owner will be liable for injuries resulting from such active misconduct. (*Montague v. Burgerhoff*, 150 Kan. 217, 223, 224, 92 P.2d 98.) *Montague* has not been cited or applied by this court since it was decided in 1939, until in *Morris v. Atchison, T. & S.F. Rly. Co.*, 198 Kan. 147, 422 P.2d 920. Hence, it follows that an owner now has the duty not only to refrain from willfully, intentionally or recklessly injuring a licensee, but in addition, to refrain from injuring him by active conduct which would constitute active negligence.

"While the distinction between an injury resulting from passive negligence—negligence which causes dangers arising from the physical condition of the land itself, on the one hand, and an owner's active negligence, on the other, may not always be clear cut, courts which have considered the question have generally held that 'active negligence' is negligent conduct of active operations on the premises or in the management of the property, as a result of which the licensee is subjected to increased hazard and danger." pp. 89-90.

At the same term of court *Morris v. Atchison, T. & S.F. Rly Co.*, 198 Kan. 147, 422 P.2d 920 (1967), was decided. In *Morris* the plaintiff was determined to be a trespasser upon the defendant's right-of-way at the time he was seriously injured when run over by one of the defendant's railroad cars. On appeal this court adopted the lengthy and exhaustive memorandum decision of District Judge David Prager (now Justice Prager), wherein the trial court granted summary judgment to the defendant on the basis of plaintiff's status as a trespasser coupled with a total lack

of any willful or wanton acts on the part of the defendant's employees. However, in discussing the duty owed a licensee, the learned trial judge stated:

" 'The more recent cases severely criticize the common law rule of liability with respect to a licensee and the modern cases now generally recognize a distinction between cases involving injury from the *active* negligence of the landowner and cases of injury resulting from a physical condition of the premises. Under this view the landowner is liable for failure to exercise ordinary care to a licensee whose presence is known or reasonably could have been known when the injury results from *active* misconduct. In the case of *Montague v. Burgerhoff*, 150 Kan. 217, 92 P.2d 98, the Supreme Court recognizes the more modern view and the active negligence theory and in that case followed a rule that if the owner is *affirmatively* and *actively* negligent causing injury to a licensee, the owner will be liable for injuries sustained as a result of such active and affirmative negligence. This case has apparently not been cited or applied since it was decided in 1939.' " p. 154.

In the brief discussion of the trial court's opinion, this court tacitly recognized the active negligence exception when injury to a licensee is involved, stating:

"Finally, it is contended that even though plaintiff was a trespasser or licensee, the trial court erred in failing to find there was an issue of negligence to be tried—because defendant's negligence was 'active' after plaintiff was on the premises and therefore its duty to him was that of due care.

"This contention likewise is covered and answered in the decision of the trial court—and correctly so. This is not a situation where the presence of a licensee is known or reasonably could have been known—and notwithstanding, the owner of the premises thereafter is affirmatively and actively guilty of negligence causing injury." p.160.

The next reference to *Montague I* is found in *Roberts v. Beebe*, 200 Kan. 119, 127, 434 P.2d 789 (1967), where it is cited in a brief two-sentence concurring and dissenting opinion. The plaintiff in the case, a nine-year-old girl, suffered injury when shot in the eye by a boy with a BB gun. A majority of the court found there was no showing of willful, wanton, or reckless conduct on the part of the defendants and denied plaintiff recovery.

In *Lemon v. Busey*, 204 Kan. 119, 461 P.2d 145 (1969), a five-year-old child fell to her death from the roof of a church. The action was brought against the trustees of the church and Montgomery Elevator Company claiming that one or more of the defendants was negligent in leaving a door unlocked which allowed the child to gain access to the roof. Summary judgment was granted defendants at the pretrial conference. On appeal this court found that plaintiff's status did not rise to that of an invitee

and, therefore, in the absence of willful, wanton, or reckless conduct by the defendants, summary judgment was proper. The majority made no mention of the active negligence doctrine as enunciated in *Montague I*, although the negligence was referred to as passive negligence in that it involved a failure to lock the door rather than affirmative acts by any of the defendants. Again Justice Fatzer, in his dissenting opinion, attempted to clarify and explain the active versus passive negligence dichotomy in premises liability cases, stating:

"The basis of liability in this case was not some claimed defect or obstacle in or on the church premises, but was the overt act of the defendants, and particularly the elevator company, in leaving the door on the fifth floor leading to the church roof unlocked so as to afford the little girl access to the roof of the church from which she fell.

"Under the rule announced in *Montague v. Burgerhoff*, 150 Kan. 217, 92 P.2d 98, affirmed in *Morris v. Atchison, T. & S.F. Rly. Co.*, 198 Kan. 147, 422 P.2d 920, the plaintiff was entitled to present his case to a jury. The negligence which was conceded by both defendants, was not passive negligence—negligence which causes dangers arising from the physical condition of the premises—but was active negligence in the managment of the church property—leaving the door unlocked—which resulted in the little girl being subjected to increased hazards and danger. Active negligence as applied in *Montague* is conduct which represents an increased hazard or danger to the licensee, or may be deemed an overt act of negligence. See James, Tort Liability of Occupiers of Land: Duties owed to Licensees and Invitees, 63 Yale L.J. 605." p. 128.

*Duckers v. Lynch*, 204 Kan. 649, 465 P.2d 945 (1970), involved injury to a social guest who fell down the basement stairs at the home of his host. Plaintiff was attempting to make his way to the bathroom when he opened the wrong door, stepped in and fell down the stairs. Plaintiff recovered a judgment in the trial court and the defendant host appealed. The plaintiff's case was based upon the alleged wanton and reckless conduct of his host. This court reversed the judgment, holding that an unlocked door did not constitute willful, wanton, or reckless conduct which would create liability necessary for recovery by a licensee. Justice Fatzer, in a short dissent, again contended the case was controlled by the earlier decision in *Montague I*, and that the negligence on the part of the host was active negligence as contemplated in the *Montague I* decision.

Next in line is the much-discussed case of *Gerchberg v. Loney*, 223 Kan. 446, 576 P.2d 593 (1978), wherein a five-year-old boy suffered serious injury from burns received while playing at a

neighbor's trashburner. Appellees in the case at bar rely heavily on *Gerchberg*, which examined in depth the premises liability doctrine wherein liability is based upon the status of the injured party. The issue was raised that this court should join those jurisdictions which have abolished the doctrine of liability based upon the status of the injured party. Justice Prager, in an eloquent dissent, adequately stated the position for abolition of the doctrine and adoption of a standard of ordinary negligence. The problem with *Gerchberg* is that the case was decided on the basis that the evidence supported submission of the case to a jury on the theory of attractive nuisance. Attractive nuisance has long been recognized as an exception to the premises liability doctrine. *Roberts v. Beebe*, 200 Kan. at 124-25; Westerbeke, *Survey of Kansas Law: Torts*, 27 Kan. L. Rev. 321, 334 (1979). In concluding the opinion, the court, after holding there was a submissible case of attractive nuisance, stated "even if a majority of this court were inclined to do so, this case is not a proper vehicle for discarding the traditional classifications." 223 Kan. at 454. The late Justice Owsley, in a concise concurring opinion, stated:

"Having so found [that the issue was one of attractive nuisance] it appears to me the issue of whether the child was an invitee, a licensee or a trespasser is not an issue in this litigation. Apparently the majority opinion and the dissent see fit to make it an issue. It is my thought that the challenge to the premises law in Kansas as it now stands should be left to a case where the decision has a bearing on the outcome of the litigation." p. 458.

Thus, while the case comprehensively addresses the subject, it could also be said that the bulk of the four opinions (an opinion was also written by Justice Miller) is dicta and not germane to the ultimate decision in the case. In that case the majority opinion, in attempting to distinguish active from passive negligence, stated that the decisions in *Montague I* and in *Morris v. Atchison, T. & S.F. Rly. Co.*, 198 Kan. 147, "merely speak of wilful and wanton acts as active negligence which injure a person whose presence is known." 223 Kan. at 453. The opinion then goes on to state that this court has not adopted active negligence as an exception to the traditional classifications recognized in premises law. These statements were clearly erroneous as may be seen by a careful study of *Montague I* and *Morris*, which were both based upon ordinary negligence. Reliance by

appellees on *Gerchberg* adds little, if any, weight to their arguments on the present issue.

In *Britt v. Allen County Community Jr. College*, 230 Kan. 502, 638 P.2d 914 (1982), the court was again asked to abandon the distinctions between licensees and invitees or in the alternative to recognize the active negligence exception. The majority opinion by the late Justice Fromme and the dissenting opinion of Justice Prager plowed no new ground which had not been covered in *Gerchberg* and earlier cases and an additional review of the opinion would add little to this opinion.

Finally, we reach *Mercer v. Fritts*, 236 Kan. 73, 689 P.2d 774 (1984), where this court applied an animal exception which has been adopted to avoid the harsh and often unfair results in cases where the injury was caused by an animal and liability is based solely upon the status of the injured party. Plaintiff Mercer was injured when she was thrown from a horse belonging to defendants and being ridden with the defendants' permission upon the defendants' property. The plaintiff was a social guest at defendants' rural home and while she was riding a stallion, the defendant Elden Fritts brought a mare into the view of the stallion causing him to become excited, rear, and fall upon the plaintiff. The trial court granted summary judgment to the defendants, holding the law of premises liability controlled and, in the absence of any willful or wanton conduct, the defendant landowners could not be held responsible for injury to a social guest who was a licensee upon their property. The Court of Appeals reversed the trial court (*Mercer v. Fritts*, 9 Kan. App. 2d 232, 676 P.2d 150 [1984]) in an opinion in which the majority found that animal law as set forth in 4 Am. Jur. 2d, Animals § 104, and Restatement (Second) of Torts §§ 509 and 518 (1976), was applicable to the case rather than the premises liability or status classification doctrine of the law. The late Chief Judge Foth dissented on the grounds that our decisions in *Britt v. Allen County Community Jr. College*, 230 Kan. 502; *Zuther v. Schild*, 224 Kan. 528; and *Gerchberg v. Loney*, 223 Kan. 446, precluded the application of animal law as an exception to the general rules of premises liability law. We granted review and in a short opinion a majority of this court affirmed the Court of Appeals. In a concurring opinion, Justice Prager stated:

"In this case, the injured social guest, Renee Mercer, urged the Court of Appeals to abolish the status classification and to place upon a landowner the

duty to a social guest to use reasonable care under the circumstances. This contention was rejected by the Court of Appeals. Renee also urged the Court of Appeals, at the very least, to authorize an active negligence exception to the premises doctrine in Kansas. The Kansas Court of Appeals likewise rejected the active negligence exception. Those courts which have adopted the active negligence exception have modified the premises doctrine to hold that if the owner, while the licensee is upon the premises in the exercise of due care, is affirmatively and actively negligent in the management of his property or business, as a result of which the licensee is subjected to increased hazard and danger, the owner will be liable for injuries sustained as a result of such active misconduct. That rule was recognized and followed by this court in *Montague v. Burgerhoff*, 150 Kan. 217, 223-24, 92 P.2d 98 (1939). *Montague* has been cited in subsequent Kansas cases but has never been expressly overruled. The active negligence exception to the premises doctrine, however, has been expressly and unequivocally rejected in our recent cases. *Gerchberg v. Loney*, 223 Kan. 446; and *Britt v. Allen County Community Jr. College*, 230 Kan. 502.

"In this case, the Court of Appeals, and the majority of this court on petition for review, have likewise rejected the active negligence exception to the common-law rule. The majority of the panel, and Chief Judge Foth in his dissenting opinion, have strongly indicated their philosophical dissatisfaction with the premises doctrine. They felt compelled, however, to follow the decisions of this court which have rejected any modifications of the premises doctrine, including the active negligence exception. But the majority of the Court of Appeals and the majority of this court have apparently found a way to apply indirectly the active negligence exception where a social guest is injured by a horse. They have done so by holding that the premises doctrine is to be ignored and that animal law is to be applied in this case. Chief Judge Foth, in his dissenting opinion, could not accept this reasoning, because he could not see the doctrine of "animal law" as affording a route around the obstacle posed by *Britt* and *Gerchberg*. He correctly observed that the basis of liability of the keeper of an animal is failure to exercise reasonable care or ordinary negligence. We so held in *Gardner v. Koenig*, 188 Kan. 135, 360 P.2d 1107 (1961).

"As the law of Kansas now stands, in view of the opinion of the Court of Appeals adopted by this court, if a social guest is injured by a horse as a result of the negligence of her host, there may be a recovery in the courts. But the same protection may not be given where the social guest is injured by active negligence of the host by some act not involving animal law. Whatever happened to equal protection of the laws?

"A 'bay horse' case, decided by the Supreme Court of Rhode Island in 1966, is *Perry v. St. Jean*, 100 R.I. 622, 218 A.2d 484 (1966). In *Perry*, the plaintiff, a social guest, while on the premises of her host, suffered personal injury when she fell from her host's horse as a result of the negligent saddling of the horse by the host's agent. Up to that time, the Supreme Court of Rhode Island had followed the premises doctrine and had not recognized the active negligence exception. The Supreme Court of Rhode Island, in its wisdom, adopted the active negligence exception to the premises doctrine. It made a distinction between an injury resulting from a passive condition of the premises on the one hand and the

occupier's active negligence on the other by quoting the following language from *Potter Title & Trust Co. v. Young*, 367 Pa. 239, 242-43, 80 A.2d 76 (1951):

> ' " '* * *'[P]assive negligence' denotes negligence which permits defects, obstacles or pitfalls to exist upon the premises, in other words, negligence which causes dangers arising from the physical condition of the land itself. 'Active negligence', on the other hand, is negligence occurring in connection with activities conducted on the premises, as, for example, negligence in the operation of machinery or of moving vehicles whereby a person lawfully upon the premises is injured.' " ' 100 R.I. at 624.

"The court gave some examples of active negligence on the part of the land-owner. Included were situations where the landowner fails to shut off the gas in his heater, or swings a golf club, or operates a motorboat, or places a hose reel on a path where he knows his guest will walk after dark, or operates an elevator, or drives a sleigh. The Rhode Island court held the active negligence exception was applicable to a social guest who was injured by a horse." pp. 76-78.

It now appears clear that our cases have been inconsistent in their treatment of the active negligence exception unanimously adopted by this court in *Montague I.* Statements in recent cases to the effect that the court has consistently refused to recognize the active negligence exception are not accurate. It is time to clarify the issue and set the record straight. A majority of this court is of the opinion the active negligence exception as originally adopted in *Montague I* is a correct statement of what the law should be in Kansas. The cases and authorities cited herein adequately cover all of the arguments pro and con relating to the active negligence exception and nothing would be gained by prolonging this opinion with a rehash of the rationale supporting the adoption or recognition of the exception.

We hold that an active negligence exception, as discussed in this opinion, should be recognized in Kansas and that when a licensee, whose presence is known or should be known, is injured or damaged by some affirmative activity conducted upon the property by the occupier of the property the duty owed to such person is one of reasonable care under the circumstances. When the injury or damage results from the condition of the premises as opposed to the activity thereon, the duty of the occupier to the licensee is only to refrain from willfully or wantonly injuring the licensee.

We recognize that there will be instances when it will be difficult to determine whether the alleged negligence falls within the area of an activity carried on by the occupier of the property or is due to the condition of the premises. However, the fact that some cases may be difficult for determination is no

justification for refusing to recognize a proper rule of law. Our prior cases, including *Britt v. Allen County Community Jr. College*, 230 Kan. 502; and *Gerchberg v. Loney*, 223 Kan. 446, are overruled to the extent that they are inconsistent with the views expressed in this opinion.

The decisions of the Court of Appeals and the district court are reversed and the case is remanded for a new trial.

PRAGER, J., concurring and dissenting: I concur in the result in this case and approve the decision of the majority adopting the active negligence exception to the common-law premises liability doctrine. I respectfully dissent, however, as to Syllabus ¶ 1, which approves and confirms as the law of Kansas the traditional common law doctrine of premises liability based upon the status of the party injured or damaged as a trespasser, licensee, or invitee. I believe that, as to invitees and licensees, this court in this case should abolish the status classification system and establish the standard that a land occupier's duty to all persons who come upon the premises with his consent is to exercise reasonable care under the circumstances. This was the basis for my concurring and dissenting opinions in *Mercer v. Fritts*, 236 Kan. 73, 74, 689 P.2d 774 (1984); *Britt v. Allen County Community Jr. College*, 230 Kan. 502, 510, 638 P.2d 914 (1982); and *Gerchberg v. Loney*, 223 Kan. 446, 455, 576 P.2d 593 (1978).

The rule adopted in this case will help in providing a remedy by due course of law to social guests and other licensees who are injured as the result of the active negligence of the possessor of the premises. However, the rule does not go far enough in that it fails to abolish the antiquated and unjust status classification system or premises doctrine.

HERD, J., joins in the foregoing concurring and dissenting opinion.

MCFARLAND, J., concurring in part and dissenting in part: I concur with Syllabus ¶¶ 1 and 2 and corresponding portions of the opinion. I dissent from Syllabus ¶¶ 3, 4, and 5 and the balance of the opinion.

SCHROEDER, C.J., dissenting: By following *Montague v. Burgerhoff*, 150 Kan. 217, 92 P.2d 98 (1939), the majority resurrects a case that has been inferentially overruled since 1967. The majority opinions contrary to *Montague* in cases subsequent to that

decision failed to even mention its existence. *Britt v. Allen County Community Jr. College*, 230 Kan. 502, 638 P.2d 914 (1982); *Duckers v. Lynch*, 204 Kan. 649, 465 P.2d 945 (1970); *Lemon v. Busey*, 204 Kan. 119, 461 P.2d 145 (1969); *Roberts v. Beebe*, 200 Kan. 119, 434 P.2d 789 (1967); *Ralls v. Caliendo*, 198 Kan. 84, 422 P.2d 862 (1967). In the cases where *Montague* was mentioned in the majority opinion it was rejected. *Gerchberg v. Loney*, 223 Kan. 446, 576 P.2d 593 (1978); *Morris v. Atchison, T.& S.F. Rly. Co.*, 198 Kan. 147, 422 P.2d 920 (1967). The majority decision here overrules not only these cases but other cases where the court has stated the duty an owner or occupant of premises owes to a mere licensee is the duty to refrain from willfully, intentionally, or recklessly injuring him. *Zuther v. Schild*, 224 Kan. 528, 581 P.2d 385 (1978); *Blackburn v. Colvin*, 191 Kan. 239, 380 P.2d 432 (1963); *Hogan v. Hess Construction Co.*, 187 Kan. 559, 358 P.2d 755 (1961); *Backman v. Vickers Petroleum Co.*, 187 Kan. 448, 357 P.2d 748 (1960); *Steinmeyer v. McPherson*, 171 Kan. 275, 232 P.2d 236 (1951); *Bessette v. Ernsting*, 155 Kan. 540, 127 P.2d 438 (1942).

It has long been said bad facts make bad law. Here, the facts take place in a suburban setting where the main activity involved was social entertainment, the mixing of drinks. As the *amicus curiae* brief of the Kansas Association of Defense Counsel points out, those seeking to have the classification system abolished argue its foundation has lost its purpose in today's urban society. The classification system arose under the feudal notion that land was most important and due to the extent of a landowner's vast land holdings, he could not guard against intruders. The argument of urbanization, that an urban landowner can better supervise his property, has been criticized, however:

"The argument that contemporary conditions no longer supply any rational basis for the status rules is not particularly persuasive. Abolitionist decisions that contrast modern urban, industrialized conditions with those existing in feudal times have taken liberties with history. This reasoning fails to recognize that current rural or suburban environments may more closely resemble the general physical characteristics of property holdings under the manorial system than property use in crowded urban settings. Since the historical justification for abolition relies in part upon this misconception, the historical rationale offers a policy basis narrower than the sphere to which the negligence rule applies: the negligence rule applies to all modern physical environments—urban, suburban, and rural—yet the historical rationale advanced for application of the negligence rule may be valid only with respect to modern urban property holdings."

Comment, *The Common Law Tort Liability of Owners and Occupiers of Land: A Trap for the Unwary?*, 36 Md. L. Rev. 816, 836-37 (1977).

By focusing on the urban setting of this case, the majority has adopted new law which will affect all owners and occupiers of premises in Kansas. In 1984 there were 74,000 farms in Kansas, totaling 48 million acres. 67th Annual Report and Farm Facts, Kansas State Board of Agriculture, p. 99. The total land acreage in the entire state of Kansas is 52.3 million acres. The majority has ignored the fact that 91.8% of Kansas land is dedicated to farming. That leaves only 8.2% of Kansas land which is "urbanized." As a result of this decision, farmers will undoubtedly experience a substantial increase in insurance premiums to cover the resulting increased risk of liability, or find themselves trapped as the unwary.

Furthermore, a great burden will be placed on the jury that hears a premises liability case in the future. In *Gerchberg v. Loney*, 223 Kan. at 450, this court recognized the many factors the jury would have to consider:

"If the traditional classifications are discarded the legal distinctions which have heretofore governed the courts in imposing a particular standard of care are also discarded. In such case the standard, reasonable care under all the circumstances, would have to be applied by the jury to the specific facts of each case. Can a lay jury reasonably be expected to consider the proper relative effect of natural and artificial conditions on the premises which are or may be dangerous, the degree of danger inherent in such conditions, the extent of the burden which should be placed on the possessor of premises to alleviate the danger, the nature, use and location of the condition or force involved, the foreseeability of the presence of the plaintiff on the premises, the obviousness of such dangerous condition or the plaintiff's actual knowledge of the condition or force which resulted in injury? It would appear these considerations should be imparted to the jury [through instructions] if it is to be placed in a position to decide whether reasonable care was exercised by the possessor of the premises. Otherwise the jury will have a free hand to impose or withhold liability."

The active negligence/passive negligence distinction now "resurrected" will be no easier for the jury to grasp. If the court continues to ignore the doctrine of stare decisis, this distinction will soon pass into oblivion. With the statutory adoption of comparative negligence the active/passive negligence distinction has been swept aside in many cases. See *Kennedy v. City of Sawyer*, 228 Kan. 439, 452-60, 618 P.2d 788 (1980).

In view of the many decisions overruled by the Kansas Supreme Court in the recent past, I am constrained to discuss

briefly the doctrine of stare decisis. Few decisions have been written elaborating on the doctrine of stare decisis because it has been so basic in the teaching of the law throughout the centuries. Students of the law are thoroughly indoctrinated by the proposition that an appellate court's decision is *binding authority* upon itself as well as upon inferior courts. The binding effect concerning the law enunciated by our Supreme Court decisions upon the district courts of Kansas was emphatically discussed by Justice Harold Herd in a concurring opinion in *State v. McQuillen,* 236 Kan. 161, 174-75, 689 P.2d 822 (1984). The doctrine must also be given respect by the jurists on the appellate court of last resort in the state.

Addressing the doctrine of stare decisis, Justice Alex Fromme, writing for the court in *Guffy v. Guffy,* 230 Kan. 89, 96-97, 631 P.2d 646 (1981), said:

"It is not always easy to determine the proper ambit of the court's authority on an issue of the present kind. We must not discard the time-tested advantages of consistency and uniformity in the fabric of the law to do that which we might conceive to be justice in a particular instance. Many statutes in Kansas establish and protect the marital relationship. We as judges may have the power, though not the right, to ignore the ultimate effects of legislative pronouncements. History teaches us that departures from clear principles of law lead to more and more departures, many of which for the moment may seem in the highest public interest; but, when that happens, the day will soon come when personal preferences of judges overcome long established principles, and the law instead of being rules governing action becomes vacillating judgments dependent upon the particular membership of the court at any given time.

" 'The judge, even when he is free, is still not wholly free. He is not to innovate at pleasure. He is not a knight-errant roaming at will in pursuit of his own ideal of beauty or of goodness. He is to draw his inspiration from consecrated principles. He is not to yield to spasmodic sentiment, to vague and unregulated benevolence. He is to exercise a discretion informed by tradition, methodized by analogy, disciplined by system, and subordinated to "the primordial necessity of order in the social life." ' Cardozo, The Nature of the Judicial Process, at 141 (1921)."

The overruling of earlier case law and the resurrection of *Montague* is contrary to the doctrine of stare decisis. That doctrine, its literal Latin meaning being "let the decision stand," is essential to maintaining certainty and stability in the legal community. By this doctrine, attorneys are able to advise their clients and their clients, in turn, are able to behave accordingly.

In the early case of *Beamish v. Beamish,* 9 H.L. Cas. *274, *338 (1861), it was said that an appellate court's decision is binding

authority upon itself as well as upon inferior courts. The function of the judiciary is not to make the law, but to ascertain and apply existing law to the facts before it. The fact the composition of the court may have changed since an earlier decision is not sufficient reason to overrule established precedent set by that earlier decision. This court has stated the doctrine of stare decisis is not inflexible, and that if an earlier decision is *clearly erroneous* or conditions have changed materially, the earlier rule should be set aside. *Hillhouse v. City of Kansas City*, 221 Kan. 369, 372, 559 P.2d 1148 (1977); *Steele v. Latimer*, 214 Kan. 329, 332-33, 521 P.2d 304 (1974); *In re Estate of Preston*, 193 Kan. 145, 148, 392 P.2d 922 (1964); *Warburton v. Warkentin*, 185 Kan. 468, 476, 345 P.2d 992 (1959).

Here, the rationale for the well established traditional rule concerning the classifications and their corresponding duties of care in premises liability is not clearly erroneous, nor have conditions changed. The feudal rationale behind the classification system, that a landowner with vast land holdings could not guard against intruders, remains clearly applicable to the 91.8% of agricultural land existing in Kansas today. Under the doctrine of stare decisis the decisions subsequent to *Montague* should be followed. Those decisions, contrary to *Montague*, are based on sound legal principles still applicable today.

The duty of a judge was established more than 2000 years before Christ. The following quotations from Benchmark, Vol. II, Nos. 3 & 4, p. 130 (1986), are relevant:

"If a judge pronounce a judgment and afterward reverse it, he shall pay twelve fold the damages which were awarded, and they shall expel him from his seat of judgment, and he shall not return." The Code of Hammurabi, 2250 B.C.

Sir Francis Bacon said:

"When a judge departs from the letter of the law he becomes a lawbreaker." De Augmentis scientiarum, 1623.

He also stated:

"Judges ought to remember that their office is *jus dicere*, and not *jus dare*—to interpret law, and not to make or give law." Francis Bacon, Essays, LVI, 1625.

Bartlett's Familiar Quotations, p. 198 (14th ed. 1968), quotes Sir Edward Coke (1552-1634):

"Reason is the life of the law; nay, the common law itself is nothing else but reason." *First Institute* (1628).

It is inconceivable to me that jurists for centuries have been mistaken in the application of reason to given facts.

It is respectfully submitted the Court of Appeals decision affirming the district court should be affirmed.